EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO MELÉNDEZ CARTAGENA, acusado y apelante.

Número: CR-76-261    Resuelto: 4 de octubre de 1977

340

*Luis F. Camacho,* abogado del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Federico Cedó Alzamora, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

El Ministerio Público acusó al apelante de violar la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. sec. 2101 y ss., por poseer, transportar y ocultar y distribuir heroína. Convicto el apelante, se le sentenció a cumplir una pena de diez a quince años de reclusión en cada cargo, a cumplirse concurrentemente.

El apelante plantea en su recurso ante nos que se le condenó a base de testimonio flaco y descarnado; que la acusación, en cada uno de sus tres cargos, no le imputaba delito alguno; y que, por constituir las tres alegadas infracciones un curso de delito único, solo podría castigársele por un solo delito.

I. *La suficiencia de la prueba.*

■ La prueba de cargo sostuvo los veredictos de culpabilidad rendidos por el jurado. El miembro de la Policía José A. Rodríguez, quien trabajaba como agente encubierto en los

municipios de Aguas Buenas, Aibonito, Cayey, Cidra y Coamo, declaró sobre diversas transacciones que realizó en tales zonas en su investigación del tráfico en narcóticos. Las explicó en detalle, describiendo su modo de vestir y otros aspectos de su *modus operandi*. Entre las personas de quien adquirió heroína se encontraba el hermano del acusado. Días más tarde adquirió del acusado cuatro bolsas de heroína. Especificó el testigo minuciosamente, entre otros detalles, las circunstancias de la compra y de la entrega del narcótico el mismo día al agente José A. Ramos. La prueba de cargo incluyó el testimonio de Ramos y del químico que identificó la droga. Examinada cuidadosamente la prueba, consideramos que la misma cumple con los criterios expuestos en *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704, 708 (1966); *Pueblo* v. *Falú Fuentes*, 102 D.P.R. 809, 811–812 (1974) y *Pueblo* v. *González del Valle*, 102 D.P.R. 374, 378 (1974).

II. *El ataque a la acusación.*

■ El apelante sostiene que la acusación es insuficiente en derecho para imputar los delitos por los cuales fue convicto debido a que no se alegó que el acusado hubiese actuado "a sabiendas o intencionalmente", tal y como se dispone en el Art. 401(a) de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2401(a). No tiene razón.

■ La Regla 35(c) de Procedimiento Criminal no exige que la acusación siga fielmente las palabras de la ley. Su propósito no es cumplir mecánicamente con una forma ritual, sino informar al acusado el delito que se le imputa, de tal suerte que pueda preparar adecuadamente su defensa. *Pueblo* v. *Felicier Villalongo*, 5 C.A. 1977. Véase: *Pueblo* v. *Reyes Bonilla*, 100 D.P.R. 265, 269 (1971).

Igual criterio ha prevalecido en el ámbito federal al interpretarse la Regla 7(c) de Procedimiento Criminal, y en California al comentarse el Art. 952 del Código Penal, fuentes de nuestra Regla 35(c). Wright, *Federal Practice and Procedure*, Vol. 1, ed. 1969, sec. 125, págs. 231–234; Whar-

ton, *Criminal Procedure*, Vol. 2, ed. 1975, sec. 256, pág. 54; *United States* v. *Cruikshank*, 92 U.S. 542, 558 (1875); *United States* v. *Hand*, 497 F.2d 929, 934 (5th Cir. 1974), *cert.* den. 424 U.S. 953; *United States* v. *Gulp*, 482 F.2d 1288, 1289-1290 (8th Cir. 1973); *People* v. *Janisse*, 22 Cal. Rptr. 830 (1962).

El apelante fue adecuadamente informado de los delitos por los que sería enjuiciado. Las alegaciones de la acusación, a los efectos de que éste actuó "ilegal, voluntaria, maliciosa y criminalmente", son suficientes en derecho para imputar los delitos, aun en ausencia de la frase "a sabiendas." El contenido esencial de tal expresión está comprendido en las alegaciones citadas. Véanse: *People* v. *Odom*, 66 P.2d 206, 209 (1937); *Wheatley* v. *United States*, 159 F.2d 599, 600 (1946); *United States* v. *Martell*, 335 F.2d 764, 765 (1964); *cf. Pueblo* v. *Díaz Breijo*, 97 D.P.R. 64 (1969).

III. *La alegación sobre concurso de delitos.*

El Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321, dispone, en parte:

". . . un acto u omisión penable de distintos modos por diferentes disposiciones penales podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una. . . ."

Esta disposición se funda en el Art. 44 del Código Penal de 1937, 33 L.P.R.A. sec. 90, que a su vez era básicamente una traducción del Art. 654 del Código Penal de California.[1]

---

[1] La versión en inglés de este artículo, West's Anno. Cal. Codes, Penal, sec. 654, promulgado originalmente en 1872, expresa:
"An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."
Es interesante señalar que en California se ha decidido repetidamente que los tribunales deben examinar el cumplimiento con el mandato transcrito aunque no se haya planteado la cuestión ante el tribunal de instancia. *People* v. *Isenor*, 94 Cal. Rptr. 746, 754 (App. 1971); *People* v. *Solo*, 86 Cal. Rptr. 829, 834 (App. 1970); *People* v. *Richardson*, 85 Cal. Rptr. 607,

La disposición citada mantiene como parte de nuestro derecho la teoría del concurso.

La teoría del concurso es de antigua estirpe. Se le ha analizado extensamente en diversos sistemas de derecho. La literatura romanogermánica sobre el tema es abundantísima. Jiménez de Asúa, L., *Tratado de Derecho Penal*, Tomo II, 2ª ed., Buenos Aires, 1950, pág. 462. El propio Código Penal de 1879 para las Islas de Cuba y Puerto Rico trataba en modo más amplio la teoría del concurso que nuestros códigos penales posteriores, estableciendo normas para situaciones no consideradas actualmente.[2] Su Art. 88 guardaba estrecha relación teórica con la legislación californiana que luego se adoptó aquí. Dicho artículo disponía que cuando "un solo hecho constituya dos o más delitos, o cuando el uno de ellos sea medio necesario para cometer el otro . . . sólo se impondrá la pena correspondiente al delito más grave, aplicándola en su grado máximo."[3] El artículo anteriormente citado del Código Penal de California muestra de hecho la huella del pensamiento civilista. Los conceptos de éste son de decidido valor para el análisis del enfoque californiano, [4]

---

613 (1970); *People* v. *Jackson*, 331 P.2d 218, 223 (App. 1958). Es innecesario expresarnos aquí sobre el particular, ya que el planteamiento se efectuó desde temprano en el proceso.

[2] Véase el Art. 86 y ss.

[3] Orozco y Arascot, A., *Código Penal de 1879 para las Islas de Cuba y Puerto Rico, Concordado*, Habana, 1879, pág. 19. Esta disposición se remonta al Art. 78 del Código de 1850 y a los Arts. 113 y 114 del Código de 1823.

[4] Muy pocos estados norteamericanos, entre ellos Montana, Nueva York, Minnesota, Idaho y Dakota del Norte tienen estatutos similares al de California y el nuestro. El tratamiento federal del problema es totalmente distinto. *Blockburger* v. *United States*, 284 U.S. 299 (1932); *Gore* v. *United States*, 357 U.S. 386 (1958); *Harris* v. *United States*, 359 U.S. 19 (1959); *Yancy* v. *United States*, 362 U.S. 389 (1960). Comment, *Multiple Offenses and Multiple Penalties under the Federal Narcotics Laws*, 28 U. Chi. L. Rev. 308 (1961). El enfoque representado por *Blockburger* y su progenie ha sido criticado con severidad. Caraway, *Sentencing Reform in Multiple Offense Cases: Judicial and Legislative Avenues*, 7 Conn. L. Rev. 257

si bien su terminología y muchos conceptos difieren considerablemente.

El Art. 654 del Código Penal de California ha sufrido cambios de interpretación extensos. Originalmente se entendía que la prohibición de imponer penas múltiples se limitaba a cuando un delito está comprendido dentro de otro, o cuando para cometer éste hay necesariamente que cometer aquél. McKissack, *Recent Developments in the Criminal Law: The Included Offense Doctrine in California*, 10 U.C.L.A. L. Rev. 870, 883–887 (1963); Note, *Double Jeopardy v. Double Punishment—Confusion in California*, 2 San Diego L. Rev. 86, 94 (1965). Hace años que esta primitiva doctrina cesó de ser ley en California. *People* v. *Kehoe*, 204 P.2d 321, 322, *cert*. denegado, 338 U.S. 834 (1949); *People* v. *Knowles*, 217 P.2d 1, 8, *cert*. denegado, 340 U.S. 879 (1950). Según se expone en estas decisiones y se desprende de la propia letra del estatuto, lo determinante es la unicidad del acto. A tal conclusión se ha llegado también en Nueva York y Minnesota bajo leyes análogas. *People* v. *Repola*, 117 N.Y.S.2d 283, 288 (1953), confirmado, 113 N.E.2d 42; *People* v. *Savarese*, 114 N.Y.S.2d 816, 835–836 (County Ct. 1952); *State* v. *Prudhomme*, 228 N.W.2d 243 (Minn. 1975); *State* v. *Krampotich*, 163 N.W.2d 772 (Minn. 1968).

Como resultado de este análisis se descartó en California la llamada doctrina de *Blockburger* ([5]) o criterio de la misma prueba. Bajo esta doctrina, si la misma prueba basta para

(1975); Comment, *Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties*, 67 Yale L.J. 916, 924 *et seq*. (1958). El propuesto Código Penal Federal rechaza la decisión de *Blockburger* de permitir castigos múltiples en ciertas situaciones donde éstos se rechazarían en California. Caraway, *op. cit.*, 282–283. El Código Penal Modelo preparado por el Instituto Americano del Derecho se aparta también de la solución federal, haciéndose claro eco en muchos particulares de teorías civilistas. Silving, Helen, *Criminal Justice*, 1971, vol. 1, págs. 519–520.

([5]) Véase *Blockburger* v. *United States*, 284 U.S. 299 (1932); Comment, *The Protection From Multiple Trials*, 11 Stan. L. Rev. 735, 743–745 (1959).

condenar por dos o más delitos, existe en realidad un solo delito, mas si un delito exige algún elemento de prueba distinto a la requerida para la comisión de otro, se trata de delitos múltiples, condenables separadamente. Se advertirá que esta doctrina es relevante únicamente si el centro de la escena lo ocupa el esfuerzo por determinar la singularidad o pluralidad de delitos. Tan pronto se resolvió en California que el factor preeminente es la unicidad del acto, se abandonó a *Blockburger*. [6]

Estos desarrollos culminaron en el caso clave de *Neal* v. *State*, 357 P.2d 839 (Cal. 1960). *Neal* establece que el término "acto", según se emplea en el Art. 654 del Código Penal de California, comprende no sólo un acto físico único sino también, en determinadas circunstancias, un curso de acción. Expresó a continuación el Juez Traynor la norma de *Neal*:

"El hecho de si un curso de conducta es divisible y en consecuencia produce más de un acto a la luz del artículo 654 depende de la intención y el objetivo del autor. Si todos los delitos sirven un solo propósito, puede castigarse al acusado por cualquiera de ellos, pero no por más de uno." (357 P.2d 839, 843–844; traducción nuestra.)

La doctrina de *Neal* no opera, según se aclara en el propio caso y en decisiones posteriores, cuando el acto genera más de una lesión. [7] *People* v. *Braun*, 106 Cal. Rptr. 56, 71–72 (App. 1973).

A pesar de críticas que se le han formulado, Schneider, *Penal Code Section 654: The Prosecutor's Dilemma*, 17 Hastings L.J. 53 (1965); McKissack, *Recent Developments*

---

[6] Para la historia de este desarrollo hasta 1959, antes de la decisión de *Neal* v. *State*, 357 P.2d 839 (Cal. 1960), véase el artículo citado en la nota anterior.

[7] En *Neal*, el acusado intentó asesinar a un matrimonio, incendiando su dormitorio. Les causó graves quemaduras a ambos. El Tribunal anuló la condena que se le impuso por incendio malicioso, pero validó su castigo por dos cargos separados de intento para cometer asesinato.

*in the Criminal Law: The Included Offense in California,* 10 U.C.L.A. L. Rev. 870, 886–887 (1963), la norma de *Neal* goza hoy de buena salud. *In Re Adams,* 536 P.2d 473, 476 (Cal. 1975); *People* v. *Bauer,* 461 P.2d 637, 642 (Cal. 1969), *cert.* denegado, 400 U.S. 927; *People* v. *Bailey,* 113 Cal. Rptr. 514, 518 (App. 1974).

■ En una etapa del pensamiento anterior a *Neal,* sin embargo, y con más razón después de *Neal,* la regla en California ha sido por largo tiempo que en los casos usuales de violación a las leyes sobre sustancias controladas, el delito de posesión está incluido en el de transportación y ambos en el de venta. Así se resolvió en *People* v. *Clemett,* 280 P. 681 (1929), en que la prueba de posesión y transportación desfilada fue únicamente la incidental a la venta, y en muchos otros casos posteriores. Véanse: *People* v. *Roberts,* 254 P.2d 501, 505 (1953) (opinión unánime emitida por el autor de la opinión disidente en *Neal*); *People* v. *Francis,* 450 P.2d 591, 595–596 (1969); *People* v. *Solo,* 86 Cal. Rptr. 829, 834 (App. 1970); *People* v. *Richardson,* 85 Cal. Rptr. 607, 613 (App. 1970).

En *González* v. *Tribunal Superior,* 100 D.P.R. 136, 143–144 (1971), adoptamos la norma de *Neal.* Allí dijimos:

"Está aceptado por la jurisprudencia del estado de origen, que el concepto 'acto u omisión' a que se refiere el artículo no debe circunscribirse al sentido literal de la expresión, esto es, no necesariamente es el acto que denota una actuación específica sino que puede ser un curso de conducta con un objetivo y propósito determinado. Tampoco está limitada su aplicabilidad a delitos que estén incluidos o son parte o ingrediente de otros."

Más adelante en dicha opinión nos referimos a las palabras ya citadas del Juez Traynor en *Neal.*

■ Bastaría lo expresado para la anulación en este caso de las sentencias impuestas por los delitos de poseer y de transportar y ocultar marihuana. Ello procede aun bajo la teoría de *Clemett.* La prueba presentada aquí para sostener

las condenas por dichos dos delitos fue la necesariamente incidental para demostrar la venta. Bajo *Neal* y *González,* que representan un enfoque más avanzado, se llega también a la misma conclusión. El autor perseguía claramente un solo objetivo: la venta al confidente. Se violó en consecuencia el Art. 44 del Código Penal de 1937, por lo que, conforme a la doctrina prevaleciente, deben anularse las penas impuestas, mas no las convicciones, por los dos delitos menores y validar la condena por la distribución de heroína. *In Re Adams,* 536 P.2d 473, 476 (1975); *People* v. *Díaz,* 427 P.2d 505, 508 (1967); *In Re McGrew,* 427 P.2d 161, 163 (1967); *In Re Ponce,* 420 P.2d 224, 225–226 (1966), *cert.* denegado, 386 U.S. 1012;(⁸) *People* v. *McFarland,* 376 P.2d 499 (1962); *People* v. *Jones,* 27 Cal. Rptr. 429 (1963). Note, *Double Jeopardy v. Double Punishment—Confusion in California,* 2 San Diego L. Rev. 86, 97 (1965).

La interpretación dada hasta ahora al Art. 44 hace innecesaria la consideración en términos constitucionales del resultado de imponer múltiples penas por el mismo acto. En *González* señalamos ya, no obstante, la tendencia existente en varios estados desprovistos de legislación comparable a la nuestra de resolver que es anticonstitucional la imposición de múltiples sentencias por un solo acto u omisión. *Whitton* v. *State,* 479 P.2d 302 (Alaska 1970); *State* v. *Ahuna,* 474 P.2d 704 (Hawaii 1970); *Heldenbrand* v. *Mills,* 476 P.2d 375 (Okla. 1970); *Jeffers* v. *United States,* 45 U.S.L.W. 4691 (1977); *Brown* v. *Ohio,* 45 U.S.L.W. 4697 (1977).

▮▮▮▮ Es innecesario también discutir en detalle la posición civilista en circunstancias de esta naturaleza sobre la teoría del concurso,(⁹) base de la legislación californiana y

---

(⁸) Según los casos citados, el hecho de que se impusieran penas concurrentes no salva la prohibición contra castigos múltiples. Véase además *People* v. *Bailey,* 113 Cal. Rptr. 514 (App. 1974).

(⁹) Véase, en general, sobre el tema: Maurach, *Tratado de Derecho Penal,* trad. del alemán, Barcelona, 1962, págs. 415–420; Silving, H., *Crimi-*

de la nuestra en este campo, ya que por dicha vía se llega a igual conclusión. Hubo aquí una pluralidad de acciones convergentes en un mismo acontecimiento antijurídico. Puig Peña, *Derecho Penal*, 5ª ed., Tomo II, vol. 2, Barcelona, 1959, págs. 307 y 319. Las infracciones fueron de naturaleza progresiva. Se produce este género de infracción cuando se consuman en etapas sucesivas diversos delitos, con tan estrecho ligamen causal entre cada estadio que el de rango mayor absorbe las sanciones correspondientes a los otros. Jiménez de Asúa, L., *Tratado de Derecho Penal*, vol. II, Buenos Aires, 1950, pág. 484 *et seq.*; Maggiore, *Derecho Penal*, vol. II, Bogotá, 1954, pág. 150 *et seq.*

Por las razones que anteceden *se modifica la sentencia del Tribunal Superior para anular las condenas impuestas por los delitos de poseer y de transportar y ocultar heroína, sosteniendo tan solo la pena impuesta por el delito de distribución.*

El Juez Asociado Señor Rigau no intervino. El Juez Asociado Señor Negrón García concurre con el resultado.

nal Justice, 1971, vol. 1, pág. 516 *et seq.*; Cuello Calón, *Derecho Penal*, México, 1961, pág. 565 *et seq.*; y otras obras citadas en el texto de la opinión que sigue a esta nota.