EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GLADYS BÁEZ CARTAGENA, acusada y apelante.

*Número:* CR-77-136          *Resuelto:* 8 de febrero de 1979

*Benigno Alicea Alicea, Pedro J. Rodríguez Santiago, Heyda Vigil McLin,* abogados de la apelante; *Roberto Armstrong, Jr., Procurador General Interino,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

Se confirma la sentencia dictada por estar igualmente dividido el Tribunal. El Juez Presidente, Señor Trías Monge, suscribió un voto particular, al que se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué, y en cuyo resultado concurre el Juez Asociado Señor Martín. El Juez Asociado Señor Rigau, emitió un voto particular. El Juez Asociado Señor Díaz Cruz, suscribió un voto particular, al que se une el Juez Asociado Señor Negrón García. El Juez Asociado

Señor Torres Rigual, votó a favor de la confirmación de la sentencia.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario.

(Fdo.) Ernesto L. Chiesa
*Secretario General*

—O—

Voto particular del Juez Presidente, Señor Trías Monge, al que se unen los Jueces Asociados Señores Dávila e Irizarry Yunqué y en cuyo resultado concurre el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 8 de febrero de 1979

En *Pueblo* v. *Meléndez Cartagena*, 106 D.P.R. 338 (1977), nos tocó interpretar la disposición del Art. 63 del Código Penal de 1974, 33 L.P.R.A. sec. 3321, referente a la imposición de penas múltiples por un mismo acto u omisión. En *González* v. *Tribunal Superior*, 100 D.P.R. 136 (1971), y en *Pueblo* v. *Braun*, 105 D.P.R. 890 (1977), abordamos el tema de los procesos múltiples en circunstancias análogas. El caso actual envuelve cuestiones relativas a este segundo problema.

El 19 de abril de 1977, alegadamente motivada por celos, la apelante Gladys Báez Cartagena agredió a Daisy Meléndez con una navaja de seguridad "Gem" y la hirió en la cara.

Por estos hechos se denunció a la apelante en la sala de Salinas del Tribunal de Distrito el 25 de abril de 1977 por infracción al Art. 4 de la Ley de Armas de Puerto Rico, Ley Núm. 17 de 19 de enero de 1951, 25 L.P.R.A. sec. 414. El 18 de marzo de 1977 se radicó asimismo acusación contra ella, basada en el mismo incidente, ante la sala de Guayama del Tribunal Superior, por el delito de mutilación.

El 31 de mayo de 1977 la apelante le solicitó a la referida sala del Tribunal Superior, en moción recibida el 3 de junio, el traslado a tal foro del delito menos grave presentado ante

el Tribunal de Distrito para su vista conjunta con el caso de mutilación. El 8 de junio de 1977 el Tribunal Superior ordenó el traslado, pero un día antes ya había ido a juicio el caso ante el Tribunal de Distrito y se había hallado culpable a la apelante tras la vista de rigor. El Tribunal de Distrito le impuso una pena de seis meses de cárcel en probatoria.

El 21 de julio de 1977 la apelante requirió que se desestimase la acusación por el delito de mutilación. Invocó la cláusula que prohíbe la doble exposición, Art. II, Sec. 11 de la Constitución de Puerto Rico y las disposiciones del Art. 63 del Código Penal de 1974. El Tribunal Superior declaró sin lugar esta moción, halló culpable a la apelante del delito de mutilación, le impuso condena de uno a tres años de reclusión, sin costas, y le concedió el beneficio de una sentencia en probatoria. La apelación reitera en este foro los argumentos expuestos en su moción de desestimación ante el tribunal de instancia.

El Art. 63 del Código Penal vigente, 33 L.P.R.A. sec. 3321, dispone:

"Salvo lo dispuesto en la sección siguiente [que permite que un acto penable como delito sea también penable como desacato], un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una.

La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."

Adviértase que el Art. 63 abarca dos series de cuestiones muy distintas. Los problemas referentes a los castigos múltiples difieren, contrario a lo que se estimaba hace muchos años, de los relativos a los procesos múltiples. Las soluciones requeridas pueden ser muy diversas. Kirchheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L.J. 513 (1949); Note, *The Protection from Multiple Trials*, 11 Stan. L. Rev. 735, 738-740 (1959); Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 267 (1965); Caraway, *Pervasive Multiple Offense*

*Problems—a Policy Analysis*, 1971 Utah L. Rev. 105, 111. El concepto del "mismo acto u omisión", tan crítico en la teoría del concurso de delitos, se da en ambas disposiciones, pero este aparente elemento común debe necesariamente interpretarse en el contexto de los distintos objetivos que ellas cumplen. La protección contra los castigos múltiples intenta prevenir la imposición de castigos excesivos por un solo acto o curso de conducta criminal. La protección contra los procesos múltiples pretende evitar la persecución y hostigamiento de una persona a través de la celebración de más de un proceso penal. *González* v. *Tribunal Superior*, 100 D.P.R. 136, 140 (1971). Distintos factores rigen la definición del mismo acto en las dos cláusulas. Véase: Note, *The Protection from Multiple Trials*, 11 Stan. L. Rev. 735, 756–757 (1959).

Concentrémonos exclusivamente por tanto en el problema de los procedimientos múltiples. Dentro de esta cuestión debe distinguirse a su vez entre la garantía contra la exposición anterior, Art. II, Sec. 11, de la Constitución de Puerto Rico y Enmienda Quinta a la Constitución de Estados Unidos, y la protección que ofrece el segundo párrafo del Art. 63 del Código Penal. *González* v. *Tribunal Superior*, supra, 140–141. Nos limitaremos a analizar este caso bajo lo dispuesto en el segundo párrafo del referido Art. 63.

¿Cuál es el criterio para precisar lo que significa la frase "el mismo acto u omisión" en la disposición legal que nos ocupa? El criterio utilizado por el Tribunal Supremo de Estados Unidos es el de la misma prueba. Si la misma prueba basta para condenar por dos o más delitos, existe un solo acto y un solo delito, mas si un delito exige algún elemento de prueba distinto a la requerida para la comisión de otro, se trata de actos y delitos múltiples. *Blockburger* v. *United States*, 284 U.S. 299 (1932) ; *Brown* v. *Ohio*, 432 U.S. 161, 53 L.Ed. 187 (1977).

Otros tribunales utilizan el criterio del mismo suceso o curso de conducta, que puede comprender varios actos ligados

entre sí por un solo propósito. Se distinguen entre ellos los de California, Michigan, Nueva Jersey, Oregon y Pennsylvania. Véanse: *Kellett* v. *Superior Court of Sacramento County*, 409 P.2d 206 (Cal. 1966); *People* v. *White*, 212 N.W.2d 222 (Mich. 1973); *State* v. *Gregory*, 333 A.2d 257 (N.J. 1975); *State* v. *Brown*, 497 P.2d 1191 (Or. 1972); *Commonwealth* v. *Campana*, 304 A.2d 432 (Pa. 1973), anulado y devuelto, 414 U.S. 808 (1973), ratificado, 314 A.2d 854 (Pa. 1974). El Juez Brennan suscribió este criterio en su opinión concurrente en *Ashe* v. *Swenson*, 397 U.S. 436, 448–460 (1970). En Inglaterra, por decisión de la Cámara de los Lores, se abandonó la vieja norma de la misma prueba, que se remonta al caso de *R.* v. *Vandercomb and Abbott*, 2 Leach 708, 168 Eng. Rep. 455 (1796), y se adoptó como nueva regla del derecho común inglés el criterio del mismo curso de conducta. *Connelly* v. *Director of Public Prosecutions*, [1964] 2 All E.R. 401. Multitud de comentaristas respaldan este nuevo desarrollo. Note, *Double Jeopardy: Multiple Prosecutions Arising from the Same Transaction*, 15 Am. Crim. L. Rev. 259, 288 (1978); Brown, *The Double Jeopardy Clause: Refining the Constitutional Proscription Against Successive Criminal Prosecutions*, 19 U.C.L.A. L. Rev. 804, 805 (1972); Note, *Criminal Law: the Same Offense in Oklahoma—Now You See It, Now You Don't*, 28 Okla. L. Rev. 131, 141–144 (1975).

El Art. 63 de nuestro Código Penal es traducción del Art. 654 del Código Penal de California. Cal. Penal Code, sec. 654 (West 1970). Al igual que en California rige en Puerto Rico el criterio del mismo suceso o curso de acción y no el de la misma prueba, tanto en casos de delitos como de procesos múltiples. No es pertinente *Blockburger* en esta jurisdicción ni para el caso de procesos múltiples ni para el de castigos múltiples. Véanse: *Kellett*, supra; *Neal* v. *State*, 357 P.2d 839 (Cal. 1960); *González* v. *Tribunal Superior*, supra; *Pueblo* v. *Braun*, supra; *Pueblo* v. *Meléndez Cartagena*, supra.

Discutida ya la situación respecto a castigos múltiples en *Meléndez Cartagena*, quedan por examinar las consecuencias en los casos de procesos múltiples de la adopción de la norma del mismo suceso. La cuestión central es su impacto sobre el problema de la acumulación de cargos para fines de su ventilación en un solo juicio.

En California, interpretando lenguaje idéntico al nuestro, el Juez Traynor concluyó en *Kellett v. Superior Court of Sacramento County*, supra:

"Si han de evitarse el hostigamiento innecesario y el derroche de fondos públicos, algunos actos que son divisibles para fines del castigo a imponerse deben considerarse tan relacionados entre sí que su enjuiciamiento sucesivo no pueda permitirse. Cuando existe un curso de acción que envuelve varios actos físicos, la intención o propósito del actor y el número de víctimas envueltas, que representan factores críticos para determinar el castigo permisible, pueden carecer de importancia cuando se intentan procesos consecutivos. Cuando ocurre, como en este caso, que el Ministerio Público está o debe estar consciente de que existe más de un delito en que el mismo acto o curso de acción desempeña un papel significante, la totalidad de esos delitos debe ser ventilada en un solo procedimiento, a menos que por justa causa se prohíba su acumulación o se permitan juicios por separado. La omisión de acumular tales delitos impedirá el procesamiento ulterior por cualquier delito omitido, siempre que el proceso inicial culmine en la absolución o condena del acusado." (Traducción nuestra.)

La norma de *Kellett* sobre la acumulación obligatoria de delitos ayuda a aliviar la congestión de los calendarios judiciales, economiza tiempo y dinero a las partes y, ante todo, reduce la posibilidad de hostigamiento de los acusados. Note, *Double Jeopardy: Multiple Prosecutions Arising from the Same Transaction*, supra; Brown, *The Double Jeopardy Clause: Refining the Constitutional Proscription Against Successive Criminal Prosecutions*, supra. Es particularmente flexible, según veremos más tarde. Permite ampliamente acusar, pero no acosar. Según se señaló en *Connelly* v. *Direc-*

*tor of Public Prosecutions,* supra, la regla sobre la acumulación compulsoria de delitos realza la imagen de la justicia y fortalece la fe en ella. Según expresó Lord Devlin en dicho caso, "Para este propósito es absolutamente necesario que las cuestiones de hecho que sean sustancialmente similares se diluciden, hasta donde sea viable, por el mismo tribunal y al mismo tiempo. La razón humana no es infalible. . . . Ningún sistema de justicia puede garantizar que toda determinación es correcta, pero puede y debe esforzarse al máximo para asegurar que no se produzcan fallos contradictorios sobre el mismo asunto." *Loc. cit.* (Traducción nuestra.)

La norma de la acumulación compulsoria de delitos ha merecido el endoso de connotadas instituciones y grupos. La suscriben el Instituto Americano del Derecho, *Model Penal Code,* 1962 Official Draft, Sec. 1.07(2); la Asociación Americana de Abogados, *Standards Relating to the Administration of Criminal Justice—Joinder and Severance,* 1978 Approved Draft, Sec. 13-2.3; y la Comisión Nacional para la Reforma de las Leyes Penales Federales, *Final Report: A Proposed New Federal Criminal Code,* Secs. 703, 705(b) (1971). Diversos estados han estatuido la norma, como se estimó en *Kellett* que lo hizo California al adoptar el Art. 654 de su Código Penal. Véanse, por ejemplo, Ill. Rev. Stat. ch. 38, Secs. 3-3, 3-4(b)(1) (1972); N.Y. Crim. Proc. Law (McKinney 1971), Secs. 40.40, 200.20; Minn. Stat. Ann., Sec. 609.035 (West 1964).

En varios estados la regla de la acumulación compulsoria de delitos tiene rango constitucional, derivándola los tribunales de la garantía contra la exposición anterior. *People* v. *White,* 212 N.W.2d 222 (Mich. 1973); *State* v. *Brown,* 497 P.2d 1191 (Or. 1972). Véase la opinión concurrente del Juez Brennan en *Ashe* v. *Swenson,* 397 U.S. 436, 454 (1970). No es necesario en este caso, sin embargo, que nos pronunciemos

colegiadamente(¹) sobre el particular, ya que la situación estatutaria en Puerto Rico es clara. El Art. 63 de nuestro Código Penal, al igual que el Art. 654 del de California, exige, salvo en las limitadas circunstancias que mencionaremos dentro de breve, que cuando el Ministerio Público esté o deba estar consciente de que existe o puede imputarse más de un delito en que el mismo acto o curso de acción desempeña un papel significante, todos esos delitos deben ventilarse en un solo procedimiento. En *González* v. *Tribunal Superior*, supra, ya advertimos que no deben desmenuzarse los hechos para tratar de establecer delitos separados. Reiteramos esta doctrina en *Pueblo* v. *Braun*, supra. Véase: H. Silving, *Constituent Elements of Crime*, Springfield, Ill., C. C. Thomas, 1967, pág. 175.

No es pertinente en el caso de Puerto Rico, como tampoco lo es en California, que diversos tribunales tengan competencia sobre los delitos a acumularse. Contrario a la situación en algunas otras jurisdicciones, rige aquí el principio de unificación de las cortes y contamos, además, con un Ministerio Público integrado. Véase: *Kellett* v. *Superior Court of Sacramento County*, supra.

Existen situaciones en que la norma de acumulación no debe aplicarse. Si fiscalía, sin pecar de negligencia, tan solo descubre la existencia de otros delitos nacidos de un mismo acto luego de celebrarse o estando celebrándose el juicio por el primer delito, no podría en justicia requerírsele la acumulación de los delitos que ignoraba. Véase: Note, *Double Jeopardy: Multiple Prosecution Arising from the Same Transaction*, supra. Cuando un acusado o El Pueblo han de perjudicarse por unirse varios delitos o acusados para fines de la celebración de un juicio conjunto el tribunal podrá también, a moción de parte, ordenar el juicio por separado de delitos o de acusados o conceder cualquier otro remedio que en jus-

---

(¹) Para expresiones individuales sobre este asunto, véase la opinión concurrente del Juez Irizarry Yunqué en *Pueblo* v. *Braun*, supra.

ticia proceda. Regla 90 de Procedimiento Criminal. Véase; Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 293, 295 (1965).

Cuando la regla de acumulación compulsoria requiere la acumulación en un proceso de delitos graves y menos graves es razonable que se entienda que sólo aplicarán los términos sobre el derecho a juicio rápido diseñados para los delitos graves en caso de un juicio conjunto. Bein, *Implementation of Kellett's Command: Joinder of Misdemeanors and Felonies in Superior Court*, 7 San Diego L. Rev. 1, 7 (1970). No debe requerirse la acumulación compulsoria cuando se trata de faltas administrativas, como infracciones menores a la Ley de Tránsito que no conllevan pena de reclusión. Tales faltas administrativas no han sido consideradas propiamente delitos. Véanse la Sec. 16-101 de la Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 1871; *People v. Battle*, 123 Cal. Rptr. 636 (App. 1975).

Acumulados los delitos, ¿qué efecto tendría su alegación de culpabilidad en cuanto a uno de ellos? ¿Se habría concluido un "proceso" y quedaría impedido el Estado de juzgar al acusado por las otras infracciones? La contestación sensata es que no. La regla de acumulación es garantía contra el hostigamiento de los acusados pero no licencia para la táctica meramente habilidosa y astuta. *People v. Tideman*, 370 P.2d 1007 (Cal. 1962); *State v. Hammang*, 534 P.2d 501, 505 (Or. 1975); *Commonwealth v. Tarver*, 357 A.2d 539 (Pa. 1976).

Lo anterior nos lleva al problema de la renunciabilidad o no del derecho a la acumulación compulsoria. En circunstancias determinadas puede entenderse que un acusado ha renunciado a la protección que le provee el Art. 63 de nuestro Código Penal. *People v. Hartfield*, 90 Cal. Rptr. 274 (App. 1970). El acusado puede solicitar juicio por separado bajo la Regla 90, sujeto a la discreción de la corte, lo que de concederse naturalmente entraña la renuncia de su derecho a la acumulación compulsoria. En caso que el acusado intente

diversas estratagemas para que se dicte sentencia en el caso menos grave con el fin de argumentar luego que ello impide un segundo juicio por el delito grave, tal tipo de conducta no está usualmente amparado por el Art. 63. *People* v. *Hartfield*, supra. Véase, *Kellett*, supra, 210.

Este último tema está a su vez ligado con la controversia sobre si le corresponde al acusado o al Ministerio Público solicitar la consolidación de los pleitos imputados separadamente. La Asociación Americana de Abogados, *op. cit.*, "standards" 13-2.3(b), y el estado de Nueva York, N.Y. Crim. Proc. Law (McKinney 1971), Sec. 40.40(2) y (3) le imponen la responsabilidad al acusado. El Código Penal Modelo, Sec. 1.07(2) y Pennsylvania, 18 Pa. Cons. Stat. Ann., Sec. 110(1)(ii) (Purdon 1973) y otras jurisdicciones la colocan sobre el Ministerio Público, como regla general. Consideramos preferible la segunda, sujeto a los salvaguardas indicados previamente.

Consideremos ahora la aplicación de los principios expuestos al caso de autos. Los delitos imputados aquí separadamente constituyen a todas luces un solo acto o curso de acción. La modalidad del Art. 4 de la Ley de Armas(²) que se probó en este caso fue el uso de una hoja de afeitar en la comisión de un delito público. Aun bajo la interpretación

---

(²)El Art. 4 de la Ley de Armas, 25 L.P.R.A. sec. 414, dispone:

"Toda persona que posea, porte o conduzca cualquier arma de las comunmente conocidas como *blackjacks*, cachiporras o manoplas; toda persona que porte o conduzca cualquier arma de las conocidas como cuchillo, puñal, daga, espada, honda, bastón de estoque, arpón, faca, estilete, punzón o cualquier instrumento similar, y excepto cuando se portaren o condujeren en ocasión de su uso como instrumentos propios de un arte, deporte, profesión, ocupación u oficio, e incluyendo además las hojas de navajas de afeitar de seguridad y garrotes cuando estos se sacaren, mostraren o usaren en la comisión de un delito público o en la tentativa de cometerlo; y toda persona que usare contra otra cualquiera de las armas nombradas anteriormente en esta sección será culpable de delito menos grave, y si ha sido convicta previamente de cualquier infracción a este Capítulo, o de cualquiera de los delitos especificados en la sec. 427 de este título, será culpable de delito grave."

más restrictiva posible del Art. 63 se trata de un mismo acto. No es posible imputar la modalidad de infracción al Art. 4 de la Ley de Armas envuelta aquí sin probar el delito mayor. La portación de una navaja de afeitar no es *per se* punible. *Cf. Pueblo* v. *Cruz Collazo*, 95 D.P.R. 651, 654–655 (1968). De todos modos, bajo la regla de acumulación compulsoria deben acumularse y ventilarse en un solo procedimiento, como hemos expresado, todos los delitos en que el mismo curso de acción desempeña un papel significante.

La apelante tenía en consecuencia derecho a obtener la acumulación de las acciones pendientes contra ella por el mismo suceso. La naturaleza del delito era tal en este singular caso que por necesidad tenía que entender tanto el tribunal como fiscalía que había dos delitos envueltos. La convicción de la acusada en el primer proceso bajo estas circunstancias impide su enjuiciamiento en el segundo. *Pueblo* v. *Cruz Collazo*, supra, 657–658.

Por las razones expuestas revocaría la sentencia dictada.

—O—

Voto particular del Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 8 de febrero de 1979

Primero una aclaración al lector: El Tribunal, compuesto como lo está ahora por ocho Jueces, en este caso se dividió 4 a 4. El resultado es que no hay—pues no puede haberla— una Opinión del Tribunal como tal, sino que hay expresiones individuales de varios de sus jueces. El resultado práctico de esta situación, cuando el Tribunal se divide en esa forma, es que la Sentencia dictada por el tribunal de instancia queda en pie, queda en vigor.

En esta ocasión hubiesen *revocado* la Sentencia apelada el Juez Presidente y los Jueces Asociados Señores Dávila, Irizarry Yunqué y Martín. La habrían *confirmado* los Jueces

Asociados Señores Díaz Cruz, Negrón García, Torres Rigual y el autor de este voto.

Ahora pasemos a los méritos del asunto.

Un Derecho que sostuviese que un criminal puede cometer un delito grave (asesinato, mutilación, etc.) impunemente porque ha pagado el fácil precio en nuestra jurisdicción de una convicción de un delito menos grave, no es un Derecho recto. Algo no estaría bien en esa situación. Dicha proposición ofende el sentido de justicia natural de los hombres y, creo, constituye una interpretación no justificada del Art. 63 del Código Penal.

El propósito de dicho artículo es evitar que a un acusado se le castigue más de una vez por un solo *acto punible*. *González* v. *Tribunal Superior*, 100 D.P.R. 136, 140 (1971). En el caso de autos hubo dos actos punibles: la violación de la Ley de Armas y la mutilación en la cara de la perjudicada perpetrada con una navaja.

Con una situación muy parecida a la del caso que nos ocupa nos dimos hace apenas unos días en *Pueblo* v. *Cruz Díaz*, Cr-78-46, Sentencia de 9 de enero de 1979. Allí el acusado fue convicto también de una violación menos grave de la Ley de Armas y del delito grave de mutilación. Hizo, en esencia, igual planteamiento que el que se hace en el caso de autos e invocó el citado Art. 63 del Código Penal. Allí el Tribunal distinguió entre el acto de la portación ilegal del arma blanca y el acto de mutilación en sí. Citó al efecto el Tribunal el caso rector de *González* v. *Tribunal*, supra.

Con frecuencia se arguye que el propósito del Art. 63 del Código Penal es proteger al ciudadano contra el hostigamiento y persecución irrazonable del gobierno, economía y consolidación de causas para reducir la duplicación y gastos operacionales que a las partes y al sistema conlleva la repetición de casos, y darle reposo final a las contiendas judiciales.

La verdad es que ante la realidad operante en el Puerto

Rico de hoy, un país de 100 millas de largo por 36 de ancho, en el cual hasta diciembre de 1978, se habían cometido en ese año 426 asesinatos y homicidios; 624 violaciones por la fuerza; 5,339 robos; 7,471 agresiones agravadas; 26,222 escalamientos; 24,183 apropiaciones ilegales y 9,071 hurtos de automóvil y en el cual en el año 1977 (no tenemos los resúmenes del año 1978 todavía) se cometió un delito grave cada 6 minutos; un delito de violencia cada 31 minutos; un delito contra la propiedad cada 8 minutos; un asesinato u homicidio cada 19 horas; una violación por la fuerza cada 11 horas; un escalamiento cada 17 minutos; y un hurto de auto cada 57 minutos, difícilmente puede hablarse de "hostigamiento" de parte del gobierno contra los acusados.[1] Todo parece indicar lo contrario, que son los criminales, los convictos y los potenciales, los que mantienen en continuo hostigamiento a nuestra población. Se le ataca, se le roba, se le mutila y se le asesina, no solamente en las vías públicas sino que dentro de sus hogares y a plena luz del día.

Concurriendo en *Pueblo* v. *Felicier Villalongo*, 105 D.P.R. 600, 605 (1977), expresé lo siguiente: "Estamos ahora en este Tribunal haciendo nueva jurisprudencia interpretativa del nuevo Código Penal. De la clase de jurisprudencia que formulemos dependerá de si el nuevo Código ha de servir para lograr el propósito para el cual fue redactado: disuadir lo más posible la comisión de crímenes en Puerto Rico y darle así a este pueblo una razonable tranquilidad, a lo cual tiene perfecto derecho."

Una serie de interpretaciones como la que propone revocar la sentencia apelada puede hacer del vigente Código Penal otro código inefectivo, como una larga serie de interpretaciones similares lo hizo del Código Penal anterior. Si nos olvidamos de que el nuevo Código Penal, a un costo de cientos de miles, o tal vez de millones de dólares, de innumerables

---

[1] Datos suministrados por la División de Análisis de la Criminalidad de la Policía de Puerto Rico.

horas de discusión oral y de innumerables toneladas de papel impreso en anteproyectos y más anteproyectos, y proyectos, y finalmente el Código, tiene un propósito, podemos, como antes dije, convertirlo en una pieza literaria inefectiva. Entonces, no dudo, habrá quienes culparían al nuevo texto y propondrían—probablemente con éxito—que se hiciese otro Código Penal.

No creo que la cura está en legislar continuamente, sino en una justa, ponderada y firme interpretación que sin ladearse injustificadamente hacia un lado u otro, sostenga al bien común que la Constitución y el Código pretenden defender y la tranquilidad y la libertad individual que también defienden la Constitución y el Código. Creo que el Tribunal debe continuar dándole vigencia a la norma establecida sobre el particular en *González* v. *Tribunal Superior*, supra, y en *Pueblo* v. *Cruz Díaz*, supra. Yo hubiese confirmado la sentencia recurrida.

—O—

Voto particular del Juez Asociado Señor Díaz Cruz al que se une el Juez Asociado Señor Negrón García.

San Juan, Puerto Rico, a 8 de febrero de 1979

La apelante cortó la cara de otra mujer con una navaja "Gem" y fue denunciada por infracción del Art. 4 de la Ley de Armas ante el Tribunal de Distrito y acusada por mutilación ante el Superior. Sentenciada a seis meses de cárcel (suspendida la sentencia en régimen probatorio), en el juicio por el delito mayor de mutilación suscitó la defensa de doble exposición fundada en el Art. II, Sec. 11 Constitución de Puerto Rico y el Art. 63 del Código Penal de 1974, desestimada por el juez sentenciador que le impuso sentencia de 1 a 3 años de reclusión, también suspendida, ante nos insiste en el planteamiento.

La interpretación del Derecho Penal por este Tribunal, y en el presente caso del Art. 63 del Código ratificado en fecha tan reciente como 1974 por la Asamblea Legislativa de Puerto Rico debe guardar una lealtad primaria al texto del estatuto según redactado por la Asamblea Legislativa, y a la seguridad colectiva que es razón de existir de dicho cuerpo legal, y con dicha profunda consciencia social debemos atender nuestra encomienda de exponer la Ley.

No existe impedimento para acumulación en un solo pliego acusatorio de delitos cometidos por un mismo acusado en breve secuencia de tiempo. No había que remontarse a California(¹) para la idea, pues desde el año 1963 rige nuestra Regla 37 de Procedimiento Criminal que en su inciso (1) instruye: "En la misma acusación o denuncia se podrán imputar dos o más delitos, en cargos por separado para cada uno de ellos, si los delitos imputados fueren de igual o similar naturaleza, o hubieren surgido del mismo acto o transacción, o de dos o más actos o transacciones relacionadas entre sí o que constituyeren partes de un plan común. Las alegaciones de un cargo podrán incorporarse en los demás cargos por referencia." Como cuestión de realidad a tenor de esta disposición se acumulan los cargos contra uno o más acusados y se sirve así a la eficiencia en el procesamiento. Nótese, sin embargo, que el lenguaje de la Regla no es imperativo y está muy lejos de sancionar la no-acumulación con carta de inmunidad o exoneración total para el acusado. La acumulación de cargos en una sola acusación, cuando propenda a los mejores intereses de la justicia, es práctica loable a disposición del Ministerio Público en la citada Regla 37. Si California prefiere imponerla con la alternativa de premio de exoneración al infractor pluralista, no es cuestión de unirnos al coro con voces

---

(¹) Otro voto particular monta un altar para *Kellett* v. *Superior Court of Sacramento County, Calif.*, 409 P.2d 206, 210 (1966), donde se llama "hostigamiento" al enjuiciamiento de criminales y se predica austeridad en las acusaciones como medida para evitar "el derroche de fondos públicos".

de "hostigamiento" de criminales y economizarnos unos pesos en alguno que otro caso. La sociedad no espera semejante atrofia de su sistema de justicia, ni tampoco fue ese el propósito legislado en el Art. 63 del Código Penal, que simplemente está dirigido a evitar la anomalía o rareza de que se pretenda castigar el mismo acto u omisión bajo disposiciones penales diferentes. Ese es el recto sentido del Código Penal aprobado por nuestra Asamblea Legislativa con la aportación de ilustres penalistas, y al mismo hemos de atenernos.

Para concluir si ha habido doble exposición no hay mejor norma que comparar los elementos integrantes de uno y otro delito y determinar si cada precepto exige prueba de un hecho que no requiere el otro. Mas si hemos de prescindir de nuestro propio análisis de la cuestión justiciable atraídos por el de otros foros, no hay por qué preferir a California sobre el Tribunal Supremo de los Estados Unidos y aún la propia Cámara de Los Lores de Inglaterra cuya decisión en *Connelly* v. *D.P.P.* (1964), 2 All E.R. 401, 402, se ha citado erróneamente, pues su *ratio decidendi* ratifica la regla de iguales *elementos de prueba* como impedimento de ulterior proceso con el siguiente lenguaje:

"*Held:* the conviction of the appellant on the second indictment, charging robbery with aggravation, would not be set aside for the following reasons— . . . a plea of autrefois acquit was inapplicable because the essential ingredients of the offenses (viz., robbery and murder) were not the same, nor would the evidence necessary to sustain a charge of robbery suffice to prove a charge of which the appellant might have been found guilty on the first indictment, viz., murder or manslaughter."

La más reciente expresión de la regla por el Supremo Federal está contenida en opinión escrita por el Juez Brennan en *Simpson* v. *United States*,([2]) 55 L.Ed.2d 70, 75 (1978), que citamos:

---

([2]) Esta opinión es de particular validez de precedente pues el problema se aborda con plena consciencia de la garantía constitucional contra doble exposición, que evade el voto particular del Juez Presidente Señor Trías

"En *Blockburger* v. *United States*, 284 U.S. 299, 76 L.Ed. 306, 52 S.Ct. 180 (1932), este Tribunal divulgó la norma (*test*) para determinar 'si dos delitos pueden diferenciarse lo bastante para permitir la imposición de castigo acumulativo.' *Brown* v. *Ohio*, 432 U.S. 161, 166; 53 L.Ed.2d 187; 97 S.Ct. 2221 (1977). Sostuvimos que '[l]a regla aplicable es que cuando el mismo acto o conducta (*transaction*) constituye una violación de dos preceptos estatutarios distintos, el criterio (*test*) a usarse para determinar si hay dos delitos o uno solo, es si cada precepto requiere prueba de un hecho que no requiere el otro.' *Blockburger* v. *United States*, supra; *Brown* v. *Ohio*, supra, a la pág. 166, 53 L. Ed. 2d 187, 97 S.Ct. 2221; *Ianelli* v. *United States*, 420 U.S. 770, 43 L.Ed. 2d 616, 95 S.Ct. 1284 (1975); *Gore* v. *United States*, 357 U.S. 386, 2 L. Ed. 2d 1405, 78 S.Ct. 1280 (1958). La prueba *Blockburger* tiene su relevancia primaria en el contexto de la doble exposición, donde es una guía para determinar cuándo dos delitos definidos separadamente constituyen el 'mismo crimen' a los efectos de la doble exposición. *Brown* v. *Ohio*, supra. "

Conocida esta regla tantas veces reiterada por el Supremo Federal, no cabe duda de que al incorporar el texto del anterior Art. 44 (33 L.P.R.A. sec. 90), al vigente Art. 63 del Código Penal de 1974 (33 L.P.R.A. sec. 3321), el legislador no se proponía arrumbar tan prestigiosos precedentes jurisprudenciales en favor del inexistente "hostigamiento" de acusados y de proteger el presupuesto de la Rama Judicial vía reducción del número de cargos contra el autor de múltiples crímenes.

*González* v. *Tribunal Superior*, 100 D.P.R. 136, 146 (1971), sigue las normas inglesa y norteamericana que hemos glosado que para determinar si dos delitos son suficientemente distinguibles para permitir la imposición de penas acumulativas descansa en una determinación sobre si

Monge. El Juez Brennan cita de *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969), que la Cláusula de Doble Exposición "protege contra múltiple castigo por el mismo delito"; y de *Jeffers* v. *United States*, 432 U.S. 137, 150–151 (1977), que la Cláusula prohíbe los procesos múltiples por la misma ofensa. *Simpson, ibid.*, escolio 5.

cada precepto penal requiere prueba de un hecho que no se exige por la otra disposición. La prueba (*test*) pone énfasis en los elementos de los dos delitos. "Si cada uno requiere prueba de un hecho que no es integrante del otro, se cumple con la norma a pesar de que haya substancial solapo (*overlap*) en la evidencia ofrecida para probar los crímenes." *Iannelli* v. *United States*, 420 U.S. 770, 785 (1975), confirmada en *Brown* v. *Ohio*, 432 U.S. 161, 166 (1977).

Volvamos a los hechos y al *ratio decidendi* de *González*, supra, resumidos a la pág. 146 de la opinión:

". . . Un individuo se presenta a la Sala de Carolina del Tribunal de Distrito para servir de fiador a dos personas. Manifiesta que es Juan Reyes Torres y procede a firmar y jurar la fianza. Como se expresa en la denuncia por falsa representación: 'simulando ser y haciéndose pasar por el Sr. Juan Reyes Torres y bajo tal carácter usurpado, solicitó, obtuvo y prestó una fianza' y en la de perjurio: 'Compareció ante la Hon. Juez . . . certificó, firmó y juró como cierto ser la persona de Juan Reyes y ser dueño de un bien inmueble . . . conociendo tanto la falsedad de que no poseía dicho bien inmueble y que no era el verdadero Juan Reyes Torres con el propósito de que dicho funcionario autorizara una fianza.'

. . . Como se observará de la lectura de los hechos esenciales alegados en la denuncia por falsa representación y en la acusación por perjurio, se le imputa *un solo e indivisible hecho esencial:* simulando ser Juan Reyes Torres 'solicitó', 'firmó', 'juró', 'obtuvo' y 'prestó' una fianza. Todos estos vocablos que aparecen en los pliegos acusatorios describen un solo curso de conducta con el propósito único de obtener ilegalmente la libertad de dos personas. Es una sola transacción." (Bastardillas nuestras.)

¿Está de tal modo englobada la conducta criminosa de la apelante en "un solo e indivisible hecho esencial"? Ella fue acusada y convicta por infracción del Art. 4 Ley de Armas (25 L.P.R.A. sec. 414) que define y sanciona como ofensa criminal la portación o transportación de hojas de navajas de afeitar de seguridad cuando se usen en la comisión de un delito público o su tentativa; y por mutilación que a tenor

del Art. 96 del Código Penal (33 L.P.R.A. sec. 4033) consiste en desfigurar el rostro de otra persona o alterar permanentemente la apariencia del mismo. Precisamente el delito de mutilación exige una prueba de especial grado que establezca el carácter "permanente" de la desfiguración([3]) de por sí elemento de máxima diferenciación del delito de portar y usar navajita de seguridad. El solo hecho de sacar o blandir la navaja es delito; se necesita mucho más que eso para mutilar. No se trata, por tanto, del "solo e indivisible hecho esencial" de *González,* supra, sino que cada delito "requiere prueba que no requiere el otro." *Simpson;* y *Connelly,* supra.

Insistimos en que no debe leerse en el Art. 63 del Código Penal lo que no dice.([4]) La diafanidad de su texto no tolera adulteraciones: ". . . un acto u omisión penable de distintos modos por diferentes disposiciones penales podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una." Este lenguaje no autoriza la inflación del "acto u omisión" alterando su naturaleza hacia una pluralidad de actos agrupados en lo que se nombra "curso de conducta".

La regla de "acumulación compulsoria", aparte de estar excluida por la Regla 37 de las de Procedimiento Criminal, por la resistencia del Art. 63 del Código Penal y nuestra decisión en *González v. Tribunal Superior,* supra, y por la precaria juridicidad de California y sus comentaristas frente a la norma mantenida por el Supremo Federal, repercute como premio para el infractor cuyo "curso de conducta" lo lleva a realizar no uno, sino múltiples actos criminosos, y como un

---

([3]) *Pueblo* v. *Ríos Rivera,* 88 D.P.R. 165 (1963).

([4]) La situación factual de acto único y no el manojo o ramillete de actos del llamado "curso de conducta" fue tipificada en *Brown* v. *Ohio,* supra, donde se pretendió castigar dos veces un solo e indivisible hecho. Al acusado que hurtó un automóvil se le denunció por hurto mayor (*felony*) y por *joy riding* (algo similar a nuestro hurto de uso, pero *misdemeanor* en Ohio) que consiste en tomar y operar un automóvil sin consentimiento del dueño. La inseparabilidad de ofensas era evidente.

burladero más en el laberinto de nuestro enjuiciamiento criminal.

El Art. 63 del Código Penal ha sido víctima de distorsión retórica. Su preceptiva, aplicable a la situación *excepcional* o anomalía, de que el mismo acto u omisión se castigue por más de una disposición del Código, ha sido alterada produciendo la figura absurda del "acto" compuesto de varios actos. La letra sencilla del citado artículo se refiere a *pluralidad de penas* para un solo acto; no trata de pluralidad de actos.

Estimo casi innecesario añadir que la propia Ley de Armas niega efecto de impedimento a la convicción por usar la navajita de seguridad, cuando expresamente ordena en su Art. 43 (25 L.P.R.A. sec. 453) que citamos:

"Sec. 453. *Proceso como impedimento para otra acción*

El proceso y castigo de cualquier persona por cualquiera de los delitos definidos y castigados por este Capítulo no impedirá el proceso y castigo de la misma persona por cualquier otro acto u omisión en violación de cualquiera de las demás disposiciones de este Capítulo, del Código Penal, Título 33, o de cualquiera otra ley."

La sentencia apelada se ajusta a Derecho y debe ser, confirmada.