# 2006 DTA 20

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL XI**

EL PUEBLO DE PUERTO RICO
Apelado

v.

FÉLIX DE JESÚS MENDOZA
Apelante

Núm. KLAN-05-00179

San Juan, Puerto Rico, a 23 de noviembre de 2005

. Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Feliciano Acevedo y Salas Soler

Salas Soler, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Félix de Jesús Mendoza, mediante el correspondiente escrito de apelación. El apelante solicita la revisión de sentencia dictada el 14 de enero de 2005 por el Hon. Alberto L. Pérez Ocasio, Juez del Tribunal de Primera Instancia, Sala Superior de Caguas. Sobre el apelante pesan sendas convicciones por violaciones al Artículo 262 (delito de conspiración) del ya derogado Código Penal de Puerto Rico de 1974, y además, a los artículos 4.04 y 4.10 de la Ley de Armas (portación y uso de armas sin licencia; y portación de arma con número de serie mutilado). Se le sentenció a cumplir pena de reclusión ascendente a 25 años. La sentencia es una mixta o fraccionada por lo que, luego de cumplir seis (6) meses de reclusión en una institución penal, el apelante habrá de extinguir el término restante de su condena bajo el privilegio de libertad a prueba (bajo el mecanismo de sentencia suspendida).

Los (25) años de la condena se distribuyen de la siguiente manera: tres (3) años por la violación al Art. 262 del Código Penal; (10) años por cada uno de los (4) cargos que enfrentó por la violación al Art. 4.04 de la Ley de Armas del 2000, los cuales habrá de cumplir concurrentemente entre sí; y por último, (12) años por la violación al Art. 4.10 de la Ley de Armas del 2000. Los términos impuestos por cada delito los habrá de cumplir de manera consecutiva.

Aunque en el caso objeto de la sentencia impuéstale al apelante, le fue imputado la comisión del delito de asesinato, éste resultó absuelto de ese cargo. No obstante, inconforme con el resultado del caso, presentó su escrito de apelación señalándole como único error al tribunal de instancia el que le haya sentenciado de forma consecutiva abusando de su discreción al tratar de imponerle un mayor castigo cuando éste fue absuelto por un jurado en el delito de asesinato en primer grado.

Contando con la comparecencia tanto del apelante como del Procurador General, estamos en posición de resolver.

### I

Nos servimos de la exposición narrativa del acto de lectura de sentencia del apelante, junto con los hechos y argumentos consignados por aquél en su escrito de apelación para esbozar una breve relación de las circunstancias fácticas y procesales de mayor relevancia al asunto planteado ante nos.

El 9 de noviembre de 2004, el apelante enfrentó un juicio por jurado, en donde se rindió veredicto de absolución en el cargo de violación al Art. 83 (asesinato en primer grado) del ya derogado Código Penal de 1974, pero de culpabilidad en el cargo imputádole por violación al Art. 262 del mismo código, y así también, por violaciones a los artículos 4.04 y 4.10 de la Ley de Armas. El 14 de enero de 2005, el Hon. Juez Luis Pérez Ocasio sentenció al apelante a cumplir una condena de veinticinco (25) años.

En el referido acto de lectura de sentencia, el Ministerio Público solicitó la imposición de una pena mayor por los delitos por los que se halló convicto al apelante. En síntesis, el Ministerio Público sostuvo que se veían probados agravantes dado que el apelante:

*"estuvo presente cuando se planificó en una primera ocasión, antes del día de los hechos, que fueron al lugar de los hechos, acecharon, vieron y observaron. Se movilizaron a varias áreas, los cuatro juntos en el vehículo, para ver dónde estaba la persona que iban a ultimar. Ese primer día [el apelante] estuvo presente en el vehículo y tenía un arma encima, sabía qué estaba haciendo. En la segunda ocasión, según la prueba ventilada ante el Honorable Tribunal, él estuvo presente también, tenía un arma en las manos, estuvo en el vehículo, acechó junto con los otros tres, observaron el momento adecuado para poder ir a matar al Sr. Carlos Flores. Nosotros entendemos que él es cómplice, él estuvo en toda la deliberación en este caso, aún que [sic.] los compañeros abogados han alegado en los escritos que el juez no debe considerar deliberación en este caso porque el jurado encontró culpables por segundo grado, omitiendo deliberación [...] eso fue un tecnicismo legal que los jurados que estaban allí no entendieron, porque esa fue la prueba que paso Juez [sic.], acecho, deliberación. Pero como no es el jurado quien va a determinar los agravantes, sino el Honorable Juez, nosotros vamos a solicitar que sean considerados. [...]."*

Por su parte, el abogado de defensa señaló en resumen, en oposición al Ministerio Público, que las circunstancias agravantes que se solicitó fueran tomadas en consideración, estaban relacionadas a un delito por el que fue absuelto el hoy apelante. Al final de la exposición se transcribe la lectura propiamente de los términos de la condena impuéstosle al apelante. ■

El Ministerio Fiscal se opuso a que se adoptara por este Tribunal el proyecto de exposición narrativa sometido por el apelante. Adujo que el mismo resultaba incompleto, que no era fiel a la totalidad de la prueba que se desfiló para sostener la solicitud de agravantes, añadiendo que allí también *"el Tribunal sentenció a otros tres coacusados"* y que el apelante *"fue sentenciado por una multiplicidad de infracciones a la Ley de Armas [...] y por una infracción al Artículo 262 del Código Penal"*.

Mediante resolución de 29 de junio de 2005, este Tribunal ordenó entonces a las partes a que enmendaran el proyecto de exposición narrativa que sometió el apelante, o que en su defecto, sometieran un nuevo proyecto estipulado. Ante el incumplimiento de las partes, el Tribunal acogió el proyecto sometido por el apelante como exposición narrativa de la prueba mediante resolución de 22 de agosto de 2005. Además, instó a las partes a presentar sus respectivos alegatos.

En su alegato, la parte apelante pareció desviarse en su discusión de la controversia que planteó originalmente en su escrito de apelación con su señalamiento de error. Planteó el apelante que la pena impuéstale era contraria a los principios de proporcionalidad de la pena, y además, que rayaba en un castigo cruel e inusitado. Entendemos que este planteamiento suyo lo liga al hecho de que se le impusieran los términos de la condena a cumplirse consecutivamente. También sostuvo que fue encontrado culpable de *"conspiración para cometer un delito y no para cometer asesinato"*, por lo que, a su juicio, debía habérsele impuesto la pena de seis (6) meses o una multa de quinientos ($500) como lo provee el primer párrafo del Artículo 262 del Código Penal de 1974.

Además, señaló que existía concurso ideal entre sus violaciones a los artículos 4.04 y 4.10 de la Ley de

Armas, por lo que, conforme a la figura del concurso de delitos (Artículo 63 del Código Penal de 1974) debía sostenerse las convicciones por ambos delitos, pero sólo debía imponérsele una pena, a saber, la pena mayor de 12 años para la que provee el referido Art. 4.10. En la alternativa, planteó el apelante que debía aplicarse retroactivamente, al amparo del principio de favorabilidad (Art. 4 del Código Penal de 1974), el contenido y alcance del Art. 7.03 de la Ley de Armas, tras su enmienda en el año 2002, bajo el entendido de que el referido articulado, a diferencia de cómo lo hacía el antiguo Artículo 43 de la Ley de Armas de 1951, no impide la aplicación de la figura del concurso de delitos a la persona cuyo acto consuma más de uno de los delitos proscritos en la referida legislación. Así también, adujo el apelante que existía concurso medial entre su acto que configuró el delito de conspiración respecto a los delitos relacionados a la Ley de Armas (que la conspiración fue el delito por medio del cual se llegó a la portación de armas).

Habiéndole instado al Procurador General, en varias ocasiones, a que presentara su alegato, y finalmente contando con su comparecencia el 3 de noviembre de 2005, procedemos a discutir el derecho aplicable para la resolución del asunto traído a nuestra atención.

## II

### A

Cuando un acusado resulta convicto de delito, el tribunal sentenciador tiene amplia, aunque no irrestricta discreción para determinar si el término de prisión impuesto habrá de cumplirse consecutiva o concurrente con cualquier o cualesquiera otros términos de prisión. En cuanto a sentencias consecutivas o concurrentes, la Regla 179 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 179, dispone:

*"Cuando una persona fuere convicta de un delito, el tribunal sentenciador, al dictar sentencia, deberá determinar si el término de prisión impuesto habrá de cumplirse consecutiva o concurrentemente con cualquiera o cualesquiera otros términos de prisión. Si el tribunal omitiere hacer dicha determinación, el término de prisión impuesto se cumplirá concurrentemente con cualesquiera otros que el tribunal impusiere como parte de su sentencia, o con cualesquiera otros que ya hubieren sido impuestos a la persona convicta."*

No obstante lo anterior, precisa tomarse en cuenta que la Regla 180 del antes referido cuerpo de reglas establece algunas excepciones a la discreción que puede ejercitar el juzgador para disponer que la pena que imponga se cumpla o no de manera concurrente. Dicha regla establece:

*"No podrán cumplirse concurrentemente los términos de prisión que deban imponerse en los siguientes casos:*

*(a) Cuando el reo fuere sentenciado por delito cometido mientras estuviere bajo apelación de otra causa o causas o mientras estuviere en libertad por haberse anulado los efectos de una sentencia condenatoria.*

*(b) Cuando el reo estuviere recluido o tuviere que ser recluido por sentencia a prisión en defecto de pago de cualquier multa impuéstale.*

*c) Cuando el reo cometiere el delito mientras estuviere recluido en una institución penal o cumpliendo cualquier sentencia.*

*d) Cuando el reo cometiere delito mientras estuviere en libertad bajo palabra o bajo indulto condicional o bajo cualquier medida de liberación condicional en la cual se le considerare cumpliendo la sentencia impuesta por el tribunal.*

*e) Cuando el reo fuere sentenciado por delito cometido mientras estuviere en libertad bajo fianza, acusado*

*por la comisión de delito grave.*

*f) Cuando el reo fuere sentenciado por delito grave o menos grave, según se tipifican en la sec. 4248 del Título 33."*

Sobre las sentencias consecutivas o concurrentes se ha comentado que cuando un acusado es hallado culpable por la comisión de dos o más delitos, puede ser sentenciado a penas de reclusión, consecutivas o concurrentes. Ernesto L. Chiesa, Derecho *Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, a las págs. 520 *et seq.* En el caso de penas concurrentes, el convicto extingue las condenas al mismo tiempo, esto es, satisface todas las condenas cuando cumple el término mayor de reclusión. *Id.* En el caso de penas consecutivas de reclusión, el convicto debe cumplir los términos de reclusión uno detrás del otro, es decir, no empieza a extinguir una pena hasta que haya satisfecho la anterior. *Id.* La determinación de imponer las penas de reclusión en forma concurrente o consecutiva, no sólo se produce cuando el Tribunal va a sentenciar al convicto por dos o más delitos en un mismo juicio; se produce también cuando se va a sentenciar a pena de reclusión a un convicto que está ya cumpliendo- o en proceso de comenzar a cumplir-, un término de reclusión por otro delito. Por supuesto, los convictos querrán siempre ser sentenciados a penas concurrentes. *Id.*

La determinación de si dos o más penas de reclusión han de cumplirse en forma consecutiva o concurrente no está a total discreción del juez sentenciador; hay regulación estatutaria, en las Reglas de Procedimiento Criminal que limita la discreción judicial. *Id.* En ese sentido, no constituye un castigo cruel e inusitado el sentenciar a un acusado a cumplir consecutivamente varias penas de prisión, tomando en cuenta la naturaleza de los delitos cometidos y el hecho de que las penas decretadas caen dentro de los límites fijados por un estatuto válido. *Pueblo v. Burgos Hernández*, 113 D.P.R. 834, 842 (1983). Así pues, descansa en la sana discreción del tribunal sentenciador la determinación del modo concurrente o consecutivo de cumplir el acusado los términos de prisión. *Pueblo v. Matos Pretto*, 93 D.P.R. 113, 132 (1966).

**B**

En el ya derogado Código Penal de 1974, se tipificó el delito de conspiración en el Artículo 262, 33 L.P.R. A. §4523. Allí se dispuso que si dos o más personas conspiraren: (1) para cometer algún delito; (2) para acusar falsa y maliciosamente a otra persona de algún delito, o conseguir que se denuncie o arreste a otra por algún delito; (3) para promover o sostener algún pleito, causa o proceso infundadamente; (4) para estafar o defraudar a alguna persona en sus bienes o por medios en sí criminales u obtener dinero o bienes valiéndose de engaños; y (5) para cometer algún acto perjudicial a la salud pública, a la moral pública o a la seguridad pública o encaminado a pervertir u obstruir la justicia o la debida administración de las leyes. En estos casos, la persona que incurra en esa actuación será sancionada con pena de reclusión por un término que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal.

No obstante, también se dispone que cuando el propósito de la conspiración sea la comisión de asesinato, entre otros delitos, la pena será de reclusión por un término de tres (3) años. De mediar circunstancias agravantes, se dispone que la pena podría aumentarse a un máximo de cinco (5) años, mientras de mediar circunstancias atenuantes, la pena podría ser reducida hasta un mínimo de dos (2) años.

Por otro lado, en el Art. 4.04 (renumerado como 5.04) de la Ley de Armas del año 2000, 25 L.P.R.A. §458c, se tipifica como delito grave la transportación de cualquier arma de fuego sin tener licencia de armas, o portar cualquier arma de fuego sin tener el correspondiente permiso para portar. Se establece un término fijo de diez (10) años de reclusión como sanción para aquella persona que fuere convicta por la comisión de dicho delito. Se dispone además, que de mediar circunstancias agravantes, la pena fija podrá ser aumentada hasta un máximo de veinte (20) años, y de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.

Además, en el referido artículo se establecen dos instancias en las que habrá de considerarse como agravantes: (1) si el arma *"se utiliza"* (o utilizó) en la comisión de cualquier delito o su tentativa; o (2) si el arma es utilizada *"para cometer"* distintos delitos entre los que se incluye asesinato en cualquiera de sus grados. Más aún, en el segundo supuesto, la ley dispone que la persona no tendrá derecho a sentencia suspendida ni a salir en libertad bajo palabra; tampoco podrá disfrutar de los beneficios de cualquier otro programa de desvío o alternativa a la reclusión reconocida en esta jurisdicción.

Por su parte, el Art. 4.10 de la Ley de Armas del 2000 (renumerado como Art. 5.10), 25 L.P.R.A. §458i, establece que toda arma deberá llevar, en forma tal que no pueda ser fácilmente alterado o borrado, el nombre del armero o marca de fábrica bajo la cual se venderá el arma o el nombre del importado y, además, un número de serie o el nombre completo de su poseedor grabado en la misma. Se añade que incurrirá en delito grave, y además, que será sancionado con pena de reclusión por un término fijo de doce (12) años, toda persona que entre tres supuestos: (a) voluntariamente remueva, mutile, cubra permanentemente, altere o borre el número de serie o el nombre de su poseedor en cualquier arma; o (b) a sabiendas compre, venda, reciba, enajene, traspase, porte o tenga en su posesión, cualquier arma a la cual se le haya removido, mutilado, cubierto permanentemente, alterado o borrado su número de serie o el nombre de su poseedor. El tercer supuesto tipificado por el artículo en cuestión refiere a casos en los que quien consuma el delito antes aludido es un armero, su agente o representante, en resumen, mediante la compra y venta de armas con al serie mutilada. Agréguese que de mediar circunstancias agravantes, la pena podrá ser aumentada hasta un máximo de veinticuatro (24) años, mientras de mediar circunstancias atenuantes, la pena podrá ser reducida a un mínimo de seis (6) años.

## C

El Art. 63, 33 L.P.R.A. §3321, provee lo pertinente a la figura del concurso de delitos. En su primer párrafo dispone que *"[s]alvo lo dispuesto en la sección siguiente, un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones, pero en ningún caso bajo más de una"*. Por otra parte, en su segundo párrafo, se dispone que *"[l]a absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás"*.

La interpretación de referido Artículo 63 precisa la discusión, a su vez, de algunos aspectos relacionados a la denominada teoría concursal. Dicha teoría promulga la consideración de tres (3) supuestos distintos, a saber, el concurso ideal, el concurso medial y el concurso real. Tomando en cuenta lo anterior, precisa indicarse que se ha interpretado que el primer párrafo del Artículo 63 provee lo concerniente a la figura del concurso ideal de delitos. Dora Nevárez Muñíz, *Derecho Penal Puertorriqueño, Parte General* (1994) en la pág. 333. Por otra parte, se ha interpretado que el segundo párrafo del Artículo 63 recoge la prohibición contra la imposición de multiplicidad de penas y contra la doble exposición (o exposición anterior), siendo ambos, preceptos concebidos y protegidos tanto por la Constitución Federal como por la Constitución del Estado Libre Asociado de Puerto Rico. *Id.* A modo de paréntesis, y en consideración a tan amplio espectro de protección, hacemos eco de las palabras de Ortega y Gasset, quien precisamente en referencia a las Constituciones, señaló que las mismas *"[...] pueden operar como piel flexible sobre todo el organismo social o como aparatos ortopédicos"*.

Sobre la interpretación del primer párrafo, se ha indicado que se refiere al caso en que un mismo acto u omisión realizado por una persona está tipificado de varias maneras en el Código Penal o en leyes especiales, en cuyo caso, se puede castigar por cualquiera de ellas, pero en ningún caso bajo más de una (concurso ideal). Dora Nevárez Muñíz, *Código Penal de Puerto Rico, Revisado y Comentado*, Edición 2000, en la pág. 118. Se añade que el Tribunal Supremo de Puerto Rico ha interpretado el concepto *"acto u omisión"* del primer párrafo del Artículo 63 como que incluye también un curso de conducta hacia un objetivo último. Cuando se trata de un curso de conducta donde existen varios delitos unidos con un mismo propósito u objetivo, la persona debe ser procesada simultáneamente por todos los delitos, pero una vez se le procesa, si resultara convicto por todos esos

delitos, cumplirá únicamente la pena correspondiente al delito que conlleve una sentencia mayor. Excepto que la intención legislativa provea lo contrario. *Id.*

Por otra parte, en cuanto al segundo párrafo del Artículo 63, como indicáramos antes, se plasma la prohibición constitucional contra las penas múltiples y la doble exposición. No obstante, la jurisprudencia ha reconocido varias excepciones a la prohibición contra los castigos y procesamientos múltiples del Artículo 63. Entre las excepciones reconocidas por la jurisprudencia es cuando la intención [legislativa] es clara en cuanto a que aun cuando se trate de delitos que sean parte de un curso de conducta o de un mismo acto, pueda procesarse a la persona de manera independiente o imponerle una pena a ser cumplida para cada delito. Así por ejemplo, se da en el caso del Art. 43 de la Ley de Armas de 1951. *Id.* en la pág. 119.

El referido Art. 43 disponía que *"el proceso y castigo de cualquier persona por cualquiera de los delitos definidos y castigados por este capítulo no impedirá el proceso y castigo de la misma persona por cualquier otro acto u omisión en violación de cualquiera de las demás disposiciones de este capítulo"*. Puede apreciarse que el efecto práctico de este articulado es impedir la aplicación de la figura del concurso de delitos en los casos en que un mismo acto de un sujeto de derecho consumara más de una disposición de la Ley de Armas. Lo anterior con el efecto de que pesara sobre el sujeto, no sólo las convicciones, sino las penas correspondientes por cada delito que hubiere cometido.

No obstante, en el año 2000 entra en vigor una nueva Ley de Armas, Ley Núm. 404 del 11 de septiembre de 2000. Ésta no provee disposición alguna que recoja *ad verbatim* el lenguaje del antiguo Art. 43. No obstante, hay que destacar que en el Art. 6.03 se indica que *"[c]uando una persona fuere convicta en virtud de esta Ley, el tribunal en su sentencia deberá determinar que el término de reclusión habrá de cumplirse de forma consecutiva con cualquier o cualesquiera otros términos de reclusión"*. Además se dispuso que *"[t]oda persona que resulte convicta de alguna de las disposiciones de esta Ley, y que dicha convicción esté asociada y sea coetánea a otra convicción de cualquiera de las disposiciones de la [...] Ley de Sustancias Controladas de Puerto Rico [...] o de la [...] Ley contra el Crimen Organizado y Lavado de Dinero del Estado Libre Asociado de Puerto Rico será sancionado con el doble de la pena provista en esta Ley"*.

Puede apreciarse que el lenguaje utilizado en ese articulado no dispuso de manera expresa que procedía el procesamiento, convicción y castigo de una persona por cada una de las violaciones que a la Ley de Armas un acto suyo consumara. Por tanto, dicho artículo no parece impedir la aplicación de la figura del concurso de delitos como se interpreta lo hacía el antiguo Artículo 43. Tampoco lo haría el Artículo 7.03 de la Ley de Armas.

El Artículo 7.03, corresponde al mismo Artículo 6.03, que fue renumerado, y que además, fue enmendado para eliminarle el primer párrafo. Lo anterior, por la Ley Núm. 27 del 10 de enero de 2002. El Artículo 6.03, renumerado como 7.03, fue a su vez enmendado mediante la Ley Núm. 137 de 3 de junio de 2004 por la cual se añade un segundo párrafo en el que se dispone que:

*"Todas las penas de reclusión que se impongan bajo este capítulo serán cumplidas consecutivamente entre sí y consecutivamente con las impuestas bajo cualquier otra ley. Además, si la persona hubiere sido convicta anteriormente por cualquier violación a este capítulo o por cualquiera de los delitos especificados en la sec. 456j de este título o usare un arma en la comisión de cualquier delito y como resultado de tal violación alguna persona sufriera daño físico o mental, la pena establecida para el delito se duplicará."*

El lenguaje de este artículo, restituye de alguna forma el efecto del antiguo Art. 43 de la Ley de Armas de 1951. La nomenclatura utilizada en el referido articulado deja entrever que se permite la concurrencia de múltiples convicciones y múltiples castigos por violaciones a la Ley de Armas, y además, se dispone que las penas habrán de cumplirse consecutivamente. Ello impediría la aplicación de la figura del concurso de delitos,

tal y como lo hacía el Art. 43.

De lo anterior se puede colegir que desde que entró en vigor la Ley de Armas del 2000, hasta antes de promulgada la enmienda en el 2004 (del Art. 7.03), parece no haber habido disposición que denotara expresamente la intención legislativa de impedir la aplicación y los efectos de la figura del concurso de delitos de modo que una convicción y pena por un delito relacionado con el uso de un arma de fuego evitara el procesamiento y castigo por otras violaciones que de esa ley la actuación de la persona hubiera consumado.

En suma, sobre la figura del concurso de delitos, y en particular, del concurso ideal, cabe interpretarse que viene al traste cuando un acto ilegal infringe varias disposiciones penales, y en ese caso, su autor sólo podrá ser castigado por una de ellas. El concurso de delitos no prohíbe la acusación, procesamiento y convicción en un mismo juicio por varios delitos que surjan del mismo acto u omisión. *Pueblo v. Santiago Pérez,* **2003 J.T.S. 170** (2003). Por tanto, el manto de protección del Artículo 63 se circunscribe a proscribir la imposición de penas múltiples por un mismo acto u omisión. *Pueblo v. Meléndez Cartagena*, 106 D.P.R. 338, 342 (1977).

Más aún, el Tribunal Supremo de Puerto Rico ha sido categórico al concluir que en actuaciones donde exista unicidad de acto tal que aplique la defensa de concurso de delitos reglamentada en el Art. 63, el acusado puede ser procesado y convicto por todos los tipos penales violentados, pero sólo podrá ser castigado bajo uno de ellos. *Meléndez Cartagena, supra*, a la pág. 345. Dicha limitación de la aplicación del concurso es de particular relevancia dentro del sistema penal puertorriqueño, pues las distintas convicciones por los delitos consumados constituyen parte del expediente penal del sujeto y pueden ser utilizados posteriormente por el Ministerio Público para alegar reincidencia.

Por último, como indicáramos antes, el concurso de delitos también provee para la figura del concurso medial. El concurso medial atiende la situación en que ante un hecho concurre un delito que es el *"medio necesario"* para cometer el delito que constituye el objetivo final de la conducta. Dora Nevárés Muñiz, *Derecho Procesal Penal Puertorriqueño, Parte General,* (2005). Lo anterior implica que una violación se considerará medio necesario para cometer otra en la medida en que la consumación de un delito no pudiera producirse sin la consumación de otro.

## D
Como norma general, la ley penal aplicable será la que estaba vigente al momento de cometerse el delito. Sin embargo, el Art. 4 del Código Penal de Puerto Rico, 33 L.P.R.A. §3004, dispone que cuando la ley vigente al momento de cometerse el delito sea distinta de la que existe al imponerse la sentencia, se aplicará siempre la más benigna. Además de lo anterior, dicho articulado establece que: las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito; también, que si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna; además, que si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución, la misma se limitará a lo establecido por esa ley; y por último, que en los casos que trata esa disposición, los efectos de la nueva ley operarán de pleno derecho.

En este artículo, la Legislatura consagró el principio de favorabilidad que impera en nuestra jurisdicción. Es preciso señalar que la doctrina establece que el principio de favorabilidad opera cuando el legislador hace una nueva valoración de la conducta punible, en el sentido de excluir o disminuir la necesidad de su represión penal. *Pueblo v. Maxon Engineering Services, Inc.*, **2003 J.T.S. 39**; véase además, Antonio Bascuñán Rodríguez, *La Aplicación de la Ley Penal Más Favorable*, 69 REV. JUR. U.P.R. 29, 47 (2000); Claus Roxin, *Derecho Penal, Parte General,* Tomo I Civitas, en la pág. 167 (1997); Luis Jiménez de Asúa, *Tratado de Derecho Penal*, Tomo II, en la pág. 543 (1950); Sebastián Soler, *Derecho Penal,* en la pág. 205 (1956), Dora Nevárés, *Derecho Penal, Parte General,* en la pág. 92 (2000).

A estos efectos, se ha expresado que el principio de la favorabilidad no consiste en el deber de realizar un cálculo estimativo de las penalidades alternativas conforme a las leyes que han existido y aplicar sin más, *"ciegamente"*, aquella que arroje el resultado menos gravoso. Por el contrario, la formulación material del principio de favorabilidad exige entender el concepto de ley más favorable en el sentido de la ley que expresa una valoración distinta del hecho. La declaración del menor merecimiento o necesidad de pena expresada en la nueva ley tiene que alcanzar también, como nueva valoración, a los hechos cometidos bajo el imperio de la ley anterior. *Id.* (Citando a Bascuñán Rodríguez).

Con el principio de favorabilidad lo que se persigue es que si el Estado enmienda o deroga la ley penal cuya violación se le imputa a una persona, ésta pueda beneficiarse del nuevo juicio legislativo sobre la punibilidad de la conducta. Por ejemplo, si se aprueba una ley que deroga la prohibición de la lotería clandestina o la *"bolita"*, aunque el nuevo estatuto nada diga sobre su aplicación retroactiva, es razonable no procesar los casos pendientes ni iniciar nuevas acciones penales por conducta que el legislador estima que ya no debe ser penalizada. Igual podría decirse en relación con una nueva ley que rebaja la pena del delito, o lo cualifica por primera vez para probatoria, etc. En este aspecto, cabe añadirse que sólo la constatación de un cambio de valoración puede producir la pérdida de la significación del conflicto que existió entre el hecho punible y la ley penal al momento de su comisión, y sólo esa pérdida de significación hace de la mantenencia del antiguo tratamiento un exceso desproporcionado en la reacción estatal y por lo mismo inadmisible en un Estado de Derecho. *Id.*

Abonando a lo anterior, se ha traído a colación el hecho de que se entiende que si en el momento de la condena el legislador considera que una conducta es menos merecedora de pena o incluso que no lo es en absoluto, desde el punto de vista político-criminal no tendría el menor sentido castigar, pese a ello conforme a la concepción vigente en el momento del hecho, que entretanto ha quedado superada. *Id.* (Citando a Claus Roxin).

Así pues, en síntesis, el principio de favorabilidad responde a una valoración distinta de una conducta punible. Éste es su fundamento y esta es la razón para su aplicación. En base a ello, se ha expresado que el principio de favorabilidad no debe aplicarse de forma automática, sin antes considerar el fundamento que subyace al mismo.

Tomando como base los preceptos y doctrinas discutidas antes, realizamos las siguientes determinaciones sobre el de derecho aplicable a los hechos de este caso.

### III

Sobre el argumento inicial de la parte apelante con respecto a la inadecuacidad o desproporcionalidad de las penas que se le impusieron, inconforme con que se le condenara a cumplirlas consecutivamente, y además, arguyendo que fueron agravadas a base de las circunstancias que permearon la comisión de un delito que le fue imputado, pero sobre el cual resultó absuelto, precisa señalar que el mismo no procede.

Basta con examinar el texto de los artículos que describen los delitos por los que se le halló convicto, junto con la parte dispositiva de las sentencias que apela, para dar cuenta de que le fueron impuestos los términos fijos dispuestos por el legislador para cada uno de los delitos por los que fue convicto. No se agravó ninguno de los términos que se le impusieron. Lo anterior, no obstante los argumentos del Ministerio Público, los cuales, parece no lograron convencer al tribunal de instancia; de hecho, tampoco a nosotros.

Súmese a ello, el hecho de que al condenarle a cumplir las penas de manera consecutiva, el juzgador no hizo sino ejercer la facultad discrecional que tiene para ello. Como bien establece la doctrina, el tribunal sentenciador tiene amplia, aunque no irrestricta, discreción para determinar si los términos de las condenas que imponga habrán de cumplirse de manera consecutiva o concurrente. En este caso, no encontramos que el

juzgador se haya excedido de los parámetros que restringen el ámbito de discreción, que le provee las reglas de procedimiento criminal y el derecho aplicable. Agréguese, que también está establecido que no constituye un castigo cruel e inusitado el sentenciar a un acusado a cumplir consecutivamente varias penas, si se hizo, como en este caso, dentro de los parámetros de la ley.

En segundo lugar, es meritorio que aclaremos al apelante que su convicción por el delito de conspiración (Art. 262) del ya derogado Código Penal de 1974, 33 L.P.R.A. §4523, no se dio en el vacío. Su convicción por este articulado fue por conspiración para cometer asesinato. Es preciso que la parte apelante tome cuenta de que el proceso criminal que fue llevado en su contra fue dirigido a dirimir principalmente su culpabilidad o no culpabilidad por el delito de asesinato imputado. Se determinó que no cometió el mismo, y más bien, se entendió probado solamente la comisión de conspiración. No obstante, es claro que aun cuando salió absuelto del asesinato, la convicción por el Art. 262 fue por conspirar para cometer, no cualquier delito, sino asesinato.

Por tanto, no tiene mérito la reclamación del apelante, que adujo *"fue encontrado culpable de conspiración para cometer un delito y no para cometer asesinato"*. Lo anterior, fue el argumento que esgrimió el apelante en su alegato para así pretender sostener que debía habérsele impuesto la pena de la modalidad menos grave para la que provee el referido Art. 262. No obstante, en su caso, aunque no se probó que cometió el asesinato, del resultado del proceso se desprende que el propósito de la conspiración fue para la comisión de asesinato. Por lo que se le impuso como pena el término fijo de tres (3) años para el que provee el segundo párrafo del referido artículo. No se le impuso pena agravada que excediera ese término, en cuyo caso podía ser aumentada hasta un máximo de cinco (5) años.

En el caso de las convicciones por los cuatro (4) cargos que pesaron en su contra en virtud del Art. 4.04 de la Ley de Armas, se le impuso al apelante una pena de (10) años por cada cargo, los cuales, habría de cumplir concurrentemente. Mientras, por la convicción en virtud del Art. 4.10 de la Ley de Armas se le impuso el término de (12) años de reclusión. En uno y otro caso, se le impuso el término fijo provisto en los artículos correspondientes. No se le impuso un término que reflejara que la pena fuera agravada.

De hecho, es preciso señalar que las circunstancias particulares del proceso criminal que fue llevado en contra del apelante, en donde se dirimieron hechos que culminaron con la convicción de su persona por conspirar para cometer asesinato (y la convicción de sus co-acusados por la comisión de asesinato), caben dentro de cualquiera de los dos supuestos para los cuales el Art. 4.04 dispone habrá de considerarse como agravante. Si bien se pudo considerar como agravante el que utilizara el arma en la comisión de un delito, en su caso, conspiración (según provee el primer supuesto a considerarse como agravante en el Art. 4.04 de la Ley de Armas); igualmente, su caso satisfacía el segundo supuesto que permite se agravara su pena, pues el arma que poseía era utilizada *"para"* cometer asesinato (aunque no lo consumara finalmente).

Más aún, huelga traer a colación el hecho de que de haberse determinado que en efecto procedía agravarle la pena bajo el segundo supuesto arriba señalado (como a nuestro juicio pudo hacerse), no tenía derecho a beneficiarse de una sentencia suspendida, o eventualmente, de la libertad bajo palabra. No obstante, en el caso del apelante, se le impuso sólo el término fijo dispuesto en ley y además se dictó una sentencia mixta o fraccionada que le permitirá disfrutar tanto de los beneficios del mecanismo de sentencia suspendida como de la libertad a prueba. Lo anterior por habérsele condenado a cumplir únicamente seis (6) meses de reclusión con la oportunidad de ser excarcelado, una vez extinga dicho término, para luego cumplir el resto del término de la sentencia en libertad a prueba o bajo palabra.

Tercero, es menester aclarar que no es correcto el planteamiento del apelante sobre la aplicación a su caso del Art. 63 del Código Penal de 1974, 33 L.P.R.A. §3321. Tampoco lo es su argumento sobre la aplicación retroactiva de la ley por razón del principio de favorabilidad.

Aunque los delitos de la Ley de Armas por los cuales el apelante resultó convicto y sentenciado parecen cumplir con el requisito de unidad de propósito requerido por el Art. 63 del Código Penal de 1974, que a su vez configura el concurso ideal de delitos, no pueden obviarse las siguientes consideraciones.

Hasta la introducción de la nueva Ley de Armas en el año 2000, el Art. 43 de la Ley de Armas de 1951 exceptuaba de manera expresa la prohibición contra los castigos y procesamientos múltiples del Art. 63 del Código Penal de 1974. Por prácticamente cincuenta (50) años la intención legislativa constaba de manera diáfana y expresa. No obstante, entre el año 2000 y 2004, cuando finalmente se incorpora el segundo párrafo del Art. 7.03 de la Ley de Armas (en particular, la primera oración de éste), sugirió el apelante que no existió disposición alguna que tuviera el alcance que tenía el Art. 43, *supra*. Sugirió también, que no fue sino hasta el 2004 que pareció restituirse a la Ley de Armas un lenguaje que manifestara de manera expresa la clara intención legislativa de que una persona cuyo acto consumara más de un delito de la referida ley debía ser procesado y castigado por cada uno de los delitos por los que se le hallara convicto. Lo anterior, con el efecto último de impedir la aplicabilidad de la figura del concurso de delitos para el que proveía en nuestro ordenamiento el Art. 63 del código Penal de 1974.

No obstante, por unos (50) años la intención del legislador fue clara -se excluia o impedía la aplicación del concurso de delitos en el caso de que un acto de una persona violara más de una disposición de la Ley de Armas. Además, entre el año 2000 al 2004, antes de ser enmendado el Art. 7.03, aunque el mismo no leía de modo que pudiera entenderse que se excluia la aplicación del concurso de delitos, tampoco se desprendía que lo permitiera. No entendemos que estuviéramos ante un supuesto de un *"vacío legislativo"*. De hecho, la enmienda de 2004 a la Ley de Armas del 2000 más bien sugiere que la intención del legislador no fue la de apartarse de aquélla que imperó desde el 1951 con la antigua Ley de Armas.

Por otro lado, huelga señalar que, contrario a lo aducido por el apelante, tampoco sería de aplicación al presente caso el principio de favorabilidad según estaba consagrado en el Art. 4 del Código Penal, 33 L.P.R.A. § 3004. El apelante ha argumentado que en su caso, la ley más benigna, es la Ley de Armas que rigió entre el año 2000 y el 2004, previo a la enmienda de este último año. Por ello, solicita se le aplique retroactivamente los efectos de la misma al amparo del principio de favorabilidad. Su contención no procede.

Como bien se ha establecido, el principio de favorabilidad opera cuando el legislador hace una nueva valoración de la conducta punible, y ello, excluyendo o disminuyendo la necesidad de castigar dicha conducta. Lo anterior supone que el legislador haya realizado un nuevo juicio valorativo sobre la punibilidad de la conducta que se le imputa (o imputó) a la persona tras una enmienda o derogación de una ley penal. Ello supone que la persona habrá de derivar un beneficio de esa ley más benigna, la cual expresa una valoración distinta.

Tomando en cuenta la doctrina establecida, nos negamos a realizar una aplicación ciega o automática del principio de favorabilidad, máxime cuando ninguna de las conductas tipificadas en las disposiciones penales cuya violación le fue imputada al apelante, y por las cuales fue convicto, sufrieron un desvalor por parte del legislador, ello, a pesar de haber enfrentado la Ley de Armas sendas enmiendas en los años 2000, 2002 y 2004. Este Tribunal no habrá de realizar un cálculo estimativo de las penalidades alternativas que pudieron habérsele impuesto al apelante valiéndose de las disposiciones de la Ley de Armas, y sus distintas enmiendas, para así aplicarle al apelante, sin más, la que arroje el resultado menos gravoso.

Por último, es menester señalar que tampoco es de aplicación la figura del concurso medial al caso de autos. Sobre este particular, basta con exponer que resulta en extremo inconsecuente plantear que el común acuerdo, concierto o contubernio para cometer asesinato haya sido en modo alguno el medio necesario para conseguir portar un arma sin licencia o para portar un arma con número de serie mutilado. Es un sin sentido pretender establecer que la consumación del delito de portación de arma sin licencia o de portación de arma con serie mutilada no podía darse si no era, necesariamente, mediante la consumación de una conspiración para cometer

asesinato (o como lo esbozó el apelante, cuando expresó que la conspiración fue el delito por medio del cual se llegó a la portación de armas).

## IV

En mérito de lo anteriormente expuesto, confirmamos la sentencia dictada por el Hermano Foro de Primera Instancia. Ello con el efecto de sostener tanto las convicciones como las penas impuestas, en lo mismos términos en que lo dispuso el foro apelado.

Así lo pronunció y manda el Tribunal certifica la Secretaria del Tribunal de Apelaciones.

La Juez Pesante Martínez concurre sin opinión escrita.

Lcda. Laura M. Vélez Vélez
Secretaria Tribunal de Apelaciones