Opinión concurrente emitida por la Jueza Asociada Señora Fiol Matta, a la cual se une el Juez Presidente Señor Hernández Denton.
Con la Sentencia que emite el Tribunal en este caso, se rechaza una interpretación irrazonablemente restrictiva sobre el concepto “relación consensual”, que hubiese tenido el efecto de desestimar una acusación por el delito de mal-trato entre pareja, tipificado en la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de agosto de 1989 (Ley 54).(1) Estoy de acuerdo con ese resultado.
HH
El Tribunal de Primera Instancia descartó correcta-mente el planteamiento de la defensa sobre insuficiencia del pliego acusatorio y encontró culpable al acusado por el delito de maltrato entre pareja. El Tribunal de Apelaciones *1019 revocó el fallo condenatorio al entender que la determina-ción de culpabilidad se asentó en una acusación que care-cía de un elemento esencial del delito de maltrato bajo la Ley 54: que el acusado mantenía una relación consensual con la perjudicada. Según el foro apelativo, aunque las rela-ciones sexuales pueden ser un elemento de una relación consensual íntima, “las meras relaciones sexuales no constitu-yen, por sí solas, una relación afectiva como la que se quiso proteger bajo la Ley 54”.(2) Por eso, a pesar de que en la acusación se alegaba que las partes habían sostenido rela-ciones sexuales íntimas, resolvió que ello no equivalía a mantener la relación consensual que la Ley 54 requiere. (3) La Procuradora General solicitó que revocáramos esa sentencia. Así lo hacemos en la Sentencia emitida hoy.
I — I h — i
Según se desprende del expediente del caso, la señora Mirelsa Rosado Santiago buscó en su carro a su pareja, el señor Eligió Pérez Feliciano, para ir a la playa. De regreso de la playa, la señora Rosado Santiago se detuvo en el ne-gocio de un familiar y, cuando estaba conversando con él, el señor Pérez Feliciano se bajó del carro para apurarla, la haló por el brazo y se volvió a montar en el vehículo. Al ella acercarse al auto, el señor Pérez Feliciano le tiró con una *1020 lata de cerveza, que le dio en la nariz.(4) La mujer le dijo al señor Pérez Feliciano que se bajara de su carro, pero él le pidió que lo llevara a su casa. De camino, la escupió en la cara en diversas ocasiones. Luego de dejarlo en su hogar, la señora Rosado Santiago se sentía nerviosa y acudió al cuartel para denunciar a su pareja.
Al señor Pérez Feliciano se le imputó haber violado el Artículo 3.1 de la Ley 54. El pliego acusatorio lee así:
El referido acusado de epígrafe, allá para el día 21 de abril de 2009, en Manatí, Puerto Rico, que forma parte de la jurisdic-ción del Tribunal de Primera Instancia de Puerto Rico, Sala de Arecibo; ilegal, voluntaria, maliciosa y con la intención criminal, empleó violencia física contra la Sra. Mirelsa Rosado Santiago, con quien ha sostenido relaciones sexuales íntimas, con-sistente en que le tiró una lata de cerveza en el rostro causándole una laceración, le habló palabras soeces y la escu-pió en la cara varias veces. (Enfasis suplido.)(5)
En el juicio, testificaron la agente que tomó la querella de violencia doméstica y la víctima. Del interrogatorio a la perjudicada se desprende claramente el tipo de relación que tenían la señora Rosado Santiago y el señor Pérez Fe-liciano: estaban próximos a cumplir cuatro años de novios y ella se quedaba a dormir en casa de él casi todas las semanas, hasta cuatro días por semana.(6)
*1021 III
La Ley 54 se creó para proteger a las personas, especial-mente a las mujeres, que sufrieran maltratos físicos o emo-cionales “a manos de una persona con quien sostiene o ha sostenido una relación íntima”. (Énfasis suplido.)(7) La in-tención de la ley era responder al alto índice de este tipo de casos en Puerto Rico, atendiendo las particularidades que presenta la violencia de pareja. A esos efectos, se incluyó el Artículo 3.1, que tipifica el delito de maltrato de pareja:
Toda persona que empleare fuerza física o violencia psicoló-gica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una rela-ción consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privati-vamente al ofensor, o a la persona de otro o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior.
El tribunal podrá imponer pena de restitución, además de la pena de reclusión establecida. (Énfasis suplido.)(8)
Para propósitos de la Ley 54, una relación consensual existe cuando dos personas aceptan de manera voluntaria compartir como pareja, sin que necesariamente cohabiten ni se hayan casado o procreado hijos en común.(9) Es inne-gable que el señor Pérez Feliciano y la señora Rosado Santiago mantenían una relación de esa naturaleza, y en esa relación consensual ocurrió el maltrato.
*1022 La palabra consensual implica consentimiento. Una re-lación sexual entre personas mayores de edad, por defini-ción, tiene que ser consentida. De no serlo, quien haya compelido al acto, ya sea mediante violencia, intimidación, engaño o uso de sustancias que impidan el consentimiento, incurre en el delito de agresión sexual.(10) Una relación consensual de pareja no tiene que incluir actos sexuales para ser considerada como tal,(11) pero el hecho de que dos personas decidan voluntariamente sostener relaciones sexuales de manera habitual no puede sino abonar a la conclusión de que existe una relación consensual íntima entre ellos. Por otra parte, no tiene sentido pensar que, solo porque se utilizó el término “relaciones sexuales ínti-mas” en la acusación, en vez del término “relaciones con-sensúales íntimas”, el señor Pérez Feliciano no quedó de-bidamente avisado de que se le estaba acusando de haber incurrido en maltrato en su relación íntima de pareja con la señora Rosado Santiago, y que, por ello, podía ser casti-gado de acuerdo con la Ley 54. Viene a la memoria, muy a propósito, la advertencia que nos hiciera el Juez Asociado Raúl Serrano Geyls hace muchos años: “Los jueces no de-bemos, después de todo, ser tan inocentes como para creer declaraciones que nadie más creería.”(12)
IV
El propósito del pliego acusatorio es informar al acusado cuál es el delito que se le imputa para que pueda preparar su defensa adecuadamente.(13) En Pueblo v. Santiago Ce *1023 deño, explicamos que “[l]o fundamental es que la acusación consigne los elementos del delito imputado en forma que constituya debida notificación de la naturaleza y causa de los cargos”.(14) Por eso, no se le exige al Ministerio Público que utilice un lenguaje “técnico o talismánico” para anun-ciarle al imputado de qué se le acusa.(15) La Regla 35(c) de Procedimiento Criminal requiere que la acusación con-tenga:
Una exposición de los hechos esenciales constitutivos del de-lito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpre-tarán en su acepción usual en el lenguaje corriente, con excep-ción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley, y podrá emplear otras que tu-vieran el mismo significado. En ningún caso será necesario el expresar en la acusación o denuncia presunciones legales ni materias de conocimiento judicial. (Énfasis suplido.)(16)
Como expresa el profesor Ernesto Chiesa, “una acusa-ción no es insuficiente porque algún elemento esencial de la acusación fue imputado sin emplear expresamente las palabras que utilizó el legislador para ese elemento”.(17) La suficiencia del pliego acusatorio se evalúa de forma liberal, porque lo que importa no es el lenguaje con que está redac-tado, sino que informe debidamente del delito por el cual se acusa.(18) Por lo tanto, el derecho constitucional del acu-sado a ser notificado de la naturaleza y causa de la acusa- *1024 ción, y a recibir copia de ésta(19) no se viola cuando el pliego acusatorio no incluye textualmente las disposiciones de la ley que se alega que se ha infringido, pero sí contiene un lenguaje que da aviso suficiente sobre los hechos y los ele-mentos del delito cuya violación se imputa.(20)
Una persona de inteligencia común puede comprender que se le está acusando de incurrir en violencia doméstica contra la persona con quien mantiene una relación consensual cuando en el pliego acusatorio se le indica que agredió a la persona “con quien ha sostenido relaciones sexuales ínti-mas” y esta frase se encuentra junto al nombre de quien ha sido su pareja por más de tres años, a quien maltrató el día anterior. El Ministerio Público indicó en su recurso que nunca enmendó la acusación para especificar que el acusado y la víctima mantenían una relación consensual porque juzgó, correctamente, que tal subsanación no era necesaria dado que el pliego acusatorio, tal como estaba redactado, consignaba los elementos del delito y notificaba debida-mente al acusado sobre los cargos presentados.(21)
No cabe duda de que, en este caso, el pliego acusatorio cumplió el propósito de informarle al señor Pérez Feliciano por qué se le estaba acusando. La acusación incluyó todos los elementos constitutivos del delito de maltrato de pareja en un lenguaje claro y corriente, entendióle por una persona de inteligencia común. En el hecho de que el acusado agre-dió a la víctima al lanzarle con la lata y escupirla estaba presente en la acusación el empleo de fuerza física e intimi-dación para causar daño, y estaba presente el que la víctima era una persona con quien el acusado había mantenido una relación consensual en el hecho de haber sostenido con ésta *1025 “relaciones sexuales íntimas”. El uso de la frase “ha soste-nido relaciones sexuales íntimas” fue suficiente para identi-ficar a la perjudicada como la persona con quien el señor Pérez Feliciano mantenía una relación consensual de inti-midad protegida por la Ley 54. No era indispensable que las palabras “relaciones” e “íntimas” fueran acompañadas por la palabra “consensúales” para que el acusado supiera que se le imputaba haber cometido un acto violento contra su pa-reja, castigable de acuerdo con el artículo 3.1 de la Ley 54. No se puede llevar el requisito de especificidad de la acusa-ción más allá de lo que el derecho exige.
Ciertamente, es nuestro deber proteger los derechos de los acusados y garantizar un debido proceso de ley. Pero, en el cumplimiento de ese deber, no debemos proceder de ma-nera irrazonable, y menos aún ante el embate de violencia machista que aqueja al País. Por todo lo anterior, estoy de acuerdo con la decisión de revocar la determinación del Tribunal de Apelaciones y reinstalar el fallo condenatorio del Tribunal de Primera Instancia que enuncia este Tribunal en su Sentencia.

 Art. 3.1 de la Ley para la Prevención e Intervención con la Violencia Domés-tica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 631) (Ley 54).

 Sentencia del Tribunal de Apelaciones, Pueblo v. Pérez Feliciano, KLAN2009 01460, 21 de mayo de 2010 (panel integrado por los Jueces Aponte Hernández y Cabán García y la Jueza Cintrón Cintrón), pág. 7, Apéndice de la Petición de certio-rari, pág. 9.

 Llama la atención que la sentencia del foro apelativo basa esta aseveración en una frase contenida en Pueblo v. Ruiz, 159 D.P.R. 194 (2003). Véase Sentencia del Tribunal de Apelaciones, supra, págs. 6-7, Apéndice de la Petición de certiorari, págs. 8-9. En la argumentación sobre la determinación de excluir a las parejas ho-mosexuales de la protección de la Ley 54 que se hizo en ese caso, se utilizó el término “relación afectiva” como parte de la explicación de lo que es una “relación consensual”. Nos parece pertinente aclarar que esa discusión no tuvo el efecto de enmendar la Ley 54 para añadir un nuevo requisito subjetivo de afectividad a las relaciones consensúales que protege esta legislación.

 Véase Alegato del Apelante ante el Tribunal de Apelaciones, 3 de febrero de 2010. El señor Pérez Feliciano narra que lo que ocurrió fue que “una pareja estaba disfrutando y compartiendo en la playa”, se detuvieron en un negocio a comprar bebidas alcohólicas y él le lanzó una lata a la mujer porque no le hizo caso a su petición de marcharse del lugar. (Énfasis suplido.) íd., págs. 17-18, Apéndice de la Petición de certiorari, págs. 61-62.

 Sentencia del Tribunal de Apelaciones, pág. 6, Apéndice de la Petición de certiorari, pág. 8.

 Transcripción de la prueba oral estipulada, págs. 6-7, Apéndice de la Petición de certiorari, págs. 24-25. La cita directa de la transcripción se encuentra en la Sentencia del Tribunal Supremo, págs. 16-17.

 Exposición de Motivos de la Ley Núm. 54, 1989 Leyes de Puerto Rico 222.

 8 L.P.R.A. sec. 631. Basta con una sola agresión mediante el uso de fuerza física de cualquier grado para que una persona pueda ser convicta según el Artículo 3.1 de la Ley 54. Pueblo v. Roldán López, 158 D.P.R. 54, 57-58 (2002); Pueblo v. Figueroa Santana, 154 D.P.R. 717, 726 (2001).

 Véase la opinión disidente en Pueblo v. Flores Flores, 181 D.P.R. 225, 250 (2011).

 Véase Art. 142 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4770.

 En casos de divorcio por separación, hemos establecido que la ausencia de relaciones sexuales, cuando las partes se comportan como una pareja en otros aspec-tos, no implica la inexistencia del vínculo (Cosme v. Marchand, 121 D.P.R. 225, 236-238 (1988)), como tampoco un acto sexual aislado significa que existe una relación de pareja (Rosario v. Galarza, 83 D.P.R. 167 (1961).

 Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 582 (1961).

 Pueblo v. Meléndez Cartagena, 106 D.P.R. 338, 340-341 (1977). En este caso, señalamos que la acusación no es insuficiente por no incluir fielmente y de forma *1023 mecánica las palabras de la ley.

 Pueblo v. Santiago Cederlo, 106 D.P.R. 663, 666 (1978). Véanse, también: Pueblo v. Rivera Rivera, 145 D.P.R. 366, 378 (1998); Pueblo v. González Olivencia, 116 D.P.R. 614, 617-618 (1985).

 Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694(1981).

 34 L.P.R.A. Ap. II, R. 35(c).

 E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Uni-dos, Colombia, Ed. Forum, 1993, Vol. III, pág. 149. Véase, también, Id., págs. 143-148.

 Pueblo v. Villafañe, Contreras, 139 D.P.R. 134, 149-151 (1995).

 Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1. Este derecho también es reconocido por la Sexta Enmienda de la Constitución de Estados Unidos.

 Pueblo v. Narváez Narváez, 122 D.RR. 80, 87-88 (1988); Chiesa, op. cit, pág. 169. Una exposición sencilla de los hechos esenciales constitutivos del delito es suficiente para cumplir con la normativa del debido proceso de ley. Pueblo v. Flores Betancourt, 124 D.P.R. 867, 883 (1989).

 Petición de certiorari, págs. 19-20. Véase la Regla 38 de Procedimiento Criminal, sobre subsanación de la acusación. 34 L.P.R.A. Ap. II.